UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY LYDON BENJAMIN,
      Plaintiff,

v.                                          CIVIL ACTION NO.
                                            17-11727-PBS
FREMONT INVESTMENT & LOAN;
LITTON LOAN SERVICING, LP; and
OCWEN LOAN SERVICING, LLC,
      Defendants.

**REPORT AND RECOMMENDATION RE:
DEFENDANTS OCWEN LOAN SERVICING, LLC AND LITTON LOAN
SERVICING, LP'S MOTION TO DISMISS THE COMPLAINT
(DOCKET ENTRY # 8)**

**August 6, 2018**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by defendants Ocwen Loan Servicing, LLC ("Ocwen") and Litton Loan Servicing, LP ("Litton").[1]  (Docket Entry # 8).  Plaintiff opposes the motion.  (Docket Entry # 23).  After conducting a hearing, this court took the motion (Docket Entry # 8) under advisement.

PROCEDURAL BACKGROUND

Plaintiff initially filed a complaint in Massachusetts Superior Court (Norfolk County) ("Superior Court") alleging

---

[1]  Ocwen, Litton, and defendant Fremont Investment & Loan ("Fremont") note that plaintiff Anthony Lydon Benjamin ("plaintiff") improperly identifies Litton in the complaint as "Litten Loan Servicing, LP."  (Docket Entry # 8).

misconduct by Ocwen, Litton, and Fremont (collectively "defendants") in connection with a mortgage loan plaintiff received in 2005.  (Docket Entry # 2-3).  Pursuant to 28 U.S.C. §§ 1332 and 1441(b), Ocwen and Litton removed the case to this court in September 2017 and presently move to dismiss all of the claims.  (Docket Entry ## 2, 8).

As set out in a seven-paragraph pro se complaint, defendants engaged in unfair and deceptive trade practices under Massachusetts General Laws chapter 93A ("chapter 93A") by providing "mis- or no information, levying fees, and implementing egregious and predatory interest rates outside of the agreed contract." (Docket Entry # 2-3, ¶ 6).  Except for an additional reference to "due process," the complaint does not set out specific causes of action or separate counts other than the chapter 93A claim.  The first paragraph alleges that, at the time of the closing, plaintiff was told that "the property was worth much more than [he] paid"; "after three months [he] could refinance and lower [his] payments"; and he could take money out of the loan for home repairs.  (Docket Entry # 2-3, ¶ 1).  Plaintiff also never received "any communication or correspondence" regarding a loan modification application or his request for a "statement of account" to determine how three payments were applied to the loan.  (Docket Entry # 2-3, ¶¶ 4-5).  Ocwen then improperly foreclosed on plaintiff's property

2

"without due process or notification" and never provided any notice of the foreclosure sale "written or oral." (Docket Entry # 2-3, ¶¶ 2-3). In addition, Fremont, Litton, and Ocwen purportedly received plaintiff's mortgage payments, "but failed to properly account for same." (Docket Entry # 2-3, ¶ 7). Under the caption "Remedy," plaintiff seeks $700,000 in damages and a rescission of the November 2016 foreclosure. (Docket Entry # 2-3, p. 7).

Liberally construing the pro se complaint, which includes references to a "contract" and the mortgage, it raises a breach of the mortgage contract based on the lack of notice of the foreclosure. In light of the alleged lack of notice of the foreclosure and the requested remedy to rescind the foreclosure, the complaint also includes a claim to declare the November 2016 foreclosure void for lack of notice. Overall, the pro se complaint sets out claims of a violation of chapter 93A; a violation of due process; a breach of contract; and a declaration to rescind or void the November 2016 foreclosure. The allegations regarding misapplication of loan payments and statements made at the closing do not survive defendants' Fed. R. Civ. P. 8 ("Rule 8") challenge for reasons stated in Roman numeral IV.

<u>STANDARD OF REVIEW</u>

When considering a motion to dismiss under Fed. R. Civ. P.

3

12(b)(6) ("Rule 12(b)(6)"), a court "accept[s] as true all well pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty International Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). "To survive a motion to dismiss, the complaint must allege 'a plausible entitlement to relief.'" Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008). While "detailed factual allegations" are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 550 U.S. 554, 555 (2007); Maldonado v. Fontanes, 563 F.3d 263, 266 (1st Cir. 2009); Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008). "[A] well-pleaded complaint may succeed even if . . . actual proof of those facts is improbable." Bell Atlantic v. Twombly, 550 U.S. at 556.

In evaluating a Rule 12(b)(6) motion, a court may consider a limited category of documents outside the complaint without converting the motion into one for summary judgment. Such documents include public records, facts susceptible to judicial notice, "'documents sufficiently referred to in the complaint,'" and "'documents central to the plaintiff's claims.'" Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007);

4

accord <u>Butler v. Balolia</u>, 736 F.3d 609, 611 (1st Cir. 2013)
(supplementing facts in complaint "by examining 'documents
incorporated by reference into the complaint, matters of public
record, and facts susceptible to judicial notice'"); <u>Freeman v.
Town of Hudson</u>, 714 F.3d 29, 36 (1st Cir. 2013) (court may
consider "'official public records; documents central to
plaintiffs' claim; and documents sufficiently referred to in
the complaint'") (ellipses and internal brackets omitted);
<u>Giragosian v. Ryan</u>, 547 F.3d 59, 65-66 (1st Cir. 2008) (can
consider documents relied on in complaint, public records, and
other documents subject to judicial notice).  Ocwen and Litton
attach the mortgage, the note, an adjustable rate rider, as
well as a publicly recorded Affidavit of Sale Under Power of
Sale in Mortgage ("Affidavit of Sale") and Affidavit Regarding
Note Secured by Mortgage Being Foreclosed ("Affidavit Regarding
Note") to their motion to dismiss, which are part of the Rule
12(b)(6) record under the foregoing exceptions.[2]  (Docket Entry

---

[2]  The bottom corner of each page of the Affidavit Regarding Note
is stamped with "WILLIAM P. O'CONNELL, REGISTER NORFOLK COUNTY
REGISTRY OF DEEDS RECEIVED AND RECORDED ELECTRONICALLY."
(Docket Entry # 9-6).  This affidavit is recorded in book 34756,
pages 284 to 285.  (Docket Entry # 9-6).  Though the Affidavit
of Sale does not contain the same stamp from the Norfolk County
Registry of Deeds, each page of the affidavit is labeled with
"Bk 34756 Pg281," "Bk 34756 Pg282," and "Bk 34756 Pg283."
(Docket Entry # 9-4).  Because both affidavits are labeled with
the same book number and have successive page numbers, it
appears that the Affidavit of Sale was also recorded at the
Norfolk County Registry of Deeds.

## 8, 9-2, 9-4, 9-6).

<u>FACTUAL BACKGROUND</u>

Plaintiff owns property located at 10 Lothrop Avenue in Milton, Massachusetts ("the property"). (Docket Entry # 2-3, ¶ 1). On or about September 23, 2005, he executed a promissory note ("the note" or "the mortgage loan") for $340,800 to Fremont, the lender. (Docket Entry # 9-2). On the same date, plaintiff executed a mortgage ("the mortgage") pledging the property as security for the note.[3] (Docket Entry # 9-2). Plaintiff was told around this time that "the property was worth much more than [he] paid" and that "after three months [he] could refinance and lower [his] payments."[4] (Docket Entry # 2-3, ¶ 1). Plaintiff was also informed that he could "take money out of the loan for home repairs." (Docket Entry # 2-3, ¶ 1).

Under the terms of the attached adjustable rate rider ("the rider"), plaintiff promised to pay $2,201.00 in monthly payments "on the first day of every month, beginning on November 1, 2005." (Docket Entry # 9-2). The mortgage initially carried a fixed interest rate, but transitioned to an adjustable interest rate on October 1, 2007. (Docket Entry # 9-2).

---

[3]  The mortgage and attached rider are referred to as a "security instrument." (Docket Entry # 9-2).

[4]  Plaintiff bought the property for $426,000. The property has a "total value" of $387,800. (Docket Entry ## 2-4, 9-1).

The mortgage also specifies how the borrower's payments shall be applied to the mortgage loan.  The relevant language reads as follows:

> [A]ll payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

(Docket Entry # 9-2, ¶ 2).

The mortgage identifies plaintiff as the borrower and the mortgagor, and Fremont as the lender.  (Docket Entry # 9-2). The first page of the mortgage names Mortgage Electronic Registration Systems, Inc. ("MERS") as a "separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  (Docket Entry # 9-2).  The mortgage also states that, "MERS is the mortgagee under this Security Instrument."  (Docket Entry # 9-2).

Under the mortgage, MERS, as mortgagee, held only legal title to the interests granted by plaintiff in the security instrument.  (Docket Entry # 9-2).  The mortgage gave MERS, as holder of legal title, the right to exercise the interests granted by plaintiff in the mortgage, including the right to foreclose and sell the property.  (Docket Entry # 9-2).  The relevant language reads as follows:

> Borrower understands, and agrees that MERS holds only legal
> title to the interests granted by Borrower in this
> Security Instrument, but, if necessary to comply with law
> or custom, MERS (as nominee for Lender and Lender's
> successors and assigns) has the right:  to exercise any or
> all of those interests, including, but not limited to, the
> right to foreclose and sell the Property; and to take any
> action required of Lender including, but not limited to,
> releasing and canceling this Security Instrument.

(Docket Entry # 9-2).

The mortgage also gave MERS, as mortgagee, the power of

sale and the authority to assign the mortgage.  (Docket Entry #

9-2).  The relevant language in the agreement states that:

> Borrower does hereby mortgage, grant and convey to MERS
> (solely as nominee for Lender and Lender's successors
> assigns) and to the successors and assigns of MERS, with
> power of sale, the following described property located in
> the County of Norfolk . . ..

(Docket Entry # 9-2).  In paragraph 22, the mortgage further

provides that if the lender invokes the "statutory power of

sale," the lender "shall mail a copy of a notice of sale to

Borrower, and to other persons proscribed by Applicable Law, in

the manner provided by Applicable law."  (Docket Entry # 9-2, ¶

22).  The notice must specify the default and "the action

required to cure the default" and that a failure to cure the

default "may result in acceleration of the" money owed and a

"sale of the property."  (Docket Entry # 9-2, ¶ 22).  The lender

must also "publish the notice of sale, and the Property shall be

sold in the manner proscribed by Applicable Law."  (Docket Entry

# 9-2, ¶ 22).  The mortgage also states that "any notice to

8

Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." (Docket Entry # 9-2, ¶ 15).

The mortgage secured to Fremont, as the lender, "the repayment of the loan."[5] (Docket Entry # 9-2). Under the mortgage, plaintiff agreed that the note "together with" the mortgage "can be sold one or more times without prior notice to the Borrower." (Docket Entry # 9-2). The note, in turn, allowed Fremont to transfer the note without prior notice to plaintiff. (Docket Entry # 9-2).

The mortgage also states that "[i]f there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer . . .."[6] (Docket Entry # 9-2). Sometime after the 2005 closing, Litton and Ocwen began servicing the mortgage. (Docket Entry # 2-3, ¶ 7).

On or about July 25, 2008, Fremont "was closed without

---

[5] The mortgage defines the "Loan" as "the debt evidenced by the Note." (Docket Entry # 9-2).

[6] The mortgage defines "Loan Servicers" as the entity "that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." (Docket Entry # 9-2).

government assistance" and is "no longer in operation."  (Docket Entry # 2-5).  Thereafter, on September 9, 2014, MERS, as nominee for Fremont, assigned the mortgage to HSBC Bank USA, N.A. ("HSBC").[7]  (Docket Entry # 9-3).  This "Assignment of Mortgage" was recorded in the Norfolk County Registry of Deeds.  (Docket Entry # 9-3).

At some point, plaintiff defaulted on his obligations under the mortgage.[8]  (Docket Entry # 9-4).  On or about November 17, 2016, HSBC, through its servicer, Ocwen, foreclosed on the property.  (Docket Entry ## 2-3, 9-5).  A notice of sale was published in the *Milton Times* on August 25, September 1, and September 8, 2016.  (Docket Entry # 9-4).  The property was subsequently sold to HSBC for $428,000 at the scheduled foreclosure auction.[9]  (Docket Entry # 9-4).  The complaint states that "Ocwen, its assigns, nominees, or legal counsel never provided any notice of the foreclosure sale written or

---

[7]  The assignment of the mortgage states that HSBC is the trustee for Fremont Home Loan Trust and lists its address as "c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409."  (Docket Entry # 9-3).

[8]  The publicly recorded Affidavit of Sale signed on November 30, 2016 establishes that plaintiff defaulted because the obligations under the mortgage were not "paid or tendered or performed when due prior to the sale."  (Docket Entry # 9-4).

[9]  The public auction was originally scheduled for September 23, 2016 but was postponed twice.  The auction eventually took place on November 17, 2016.  (Docket Entry # 9-4).

oral" and in failing to do so, Ocwen "improperly foreclosed on [the] property without due process or notification."[10]   (Docket Entry # 2-3).

At an undetermined point in time, "the property was in the modification process."   (Docket Entry # 2-3, ¶ 4).   As part of a modification application, plaintiff "submitted a loan package with all the documents requested by the lender."   (Docket Entry # 2-3, ¶ 4).   Subsequently, plaintiff was advised that "there were documents missing."   (Docket Entry # 2-3, ¶ 4).   Plaintiff then resubmitted "these documents a second time," but never received any further "communication or correspondence on the modification."   (Docket Entry # 2-3, ¶ 4).

As set forth in the complaint, plaintiff also requested "a statement of account" from the mortgage holder to determine how "three payments, requested by the lender and paid by [plaintiff]," were applied to the loan.[11]   (Docket Entry # 2-3, ¶ 5).   Similar to the modification request, plaintiff did not receive a response.   (Docket Entry # 2-3, ¶ 5).   The complaint

---

[10]   According to the Affidavit of Sale, HSBC complied with "Chapter 244, Section 14 of the Massachusetts General Laws, as amended, by causing to be mailed the required notices, certified mail, return receipt requested."   (Docket Entry # 9-4).   The complaint states that Ocwen conducted the foreclosure without notification.   (Docket Entry ## 2-3, ¶¶ 2, 3).

[11]   Plaintiff does not identify who the mortgage holder was at the time of the modification process.

further states that Fremont, Litton, and Ocwen received mortgage payments "on [his] account but failed to properly account for same." (Docket Entry # 2-3, ¶ 7).

DISCUSSION

## I.  Violation of Chapter 93A

As an initial matter, Ocwen and Litton seek to dismiss the chapter 93A claim because plaintiff did not assert in the complaint that he mailed or delivered a demand letter to defendants as required under chapter 93A, section nine.  At the hearing (Docket Entry # 24), plaintiff's counsel requested an opportunity to amend the chapter 93A claim.

Before bringing suit under the statute, a plaintiff must mail to the defendant a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon."  Mass. Gen. Laws ch. 93A, § 9(3). This notification must be provided no fewer than 30 days prior to filing suit.  Mass. Gen. Laws ch. 93A, § 9(3).

The statutory notice requirement "is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975)).  Furthermore, "as a special element" of the cause of action, it must be alleged in the complaint.  Id.  A "'failure to send a demand letter is sufficient ground to

justify dismissal of the Chapter 93A claim[s].'"   Okoye v. Bank
of N.Y. Mellon, 2011 WL 3269686, at *4 (D. Mass. July 28, 2011)
(quoting Rodi v. S. New Eng. Sch. of Law, 389 F.3d at 19); see,
e.g., McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 218 (1st
Cir. 2012) (affirming dismissal of chapter 93A claim due to
absence of demand letter).

     The complaint does not plead that plaintiff mailed or
delivered a demand letter to defendants.  For purposes of the
pending motion, plaintiff does not assert, and therefore
waives, an argument that an exception to the demand letter, see
Mass. Gen. Laws ch. 93A, § 9(3); McKenna v. Wells Fargo Bank,
N.A., 693 F.3d at 218, applies.  See Vallejo v. Santini-
Padilla, 607 F.3d 1, 7, n.4 (1st Cir. 2010); see also Curet-
Velazquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 54 (1st
Cir. 2011) ("[a]rguments alluded to but not properly developed
before a magistrate judge are deemed waived"); Coons v.
Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).

     Accordingly, the chapter 93A claim is subject to dismissal
without prejudice.  In the event a demand letter was mailed or
delivered, or is not necessary, see Mass. Gen. Laws ch. 93A, §
9(3), plaintiff may file a motion for leave to amend within 30
days.[12]  See, e.g., Rodi v. Southern New England School of Law,

---

[12]  In light of the recommended dismissal of the chapter 93A
claim based on the foregoing argument, it is not necessary to

389 F.3d at 20 (directing district court to afford the
plaintiff opportunity to amend and replead chapter 93A claim).

II.   Lack of Notice and Due Process Violation

A.   Statutory and Contractual Notice

The complaint states that Ocwen never provided plaintiff
with any notice of the foreclosure sale.  (Docket Entry # 2-3,
¶¶ 2, 3).  Ocwen and Litton argue that this allegation lacks
merit and is subject to dismissal because Ocwen provided notice
of the foreclosure "both by way of publication and to
[p]laintiff individually."  (Docket Entry # 9).  In support of
their argument, Ocwen and Litton rely on the statements in the
publicly recorded Affidavit of Sale.  (Docket Entry # 9).
Plaintiff maintains that defendants did not provide him with
"the notice requirements of paragraph 22 of the applicable
mortgage, [and] the notice requirements . . . of Massachusetts
General Laws c. 183, section 21, and of Massachusetts General
Laws c. 244, section 14."  (Docket Entry # 23).  Plaintiff
further contends that due to defendants' failure to provide him
"with the required contractual and statutory notice requirements
necessary to effectuate the mortgage, the foreclosure must be
set aside."  (Docket Entry # 23) (citing Pinti v. Emigrant

---

address defendants' alternative argument for dismissal regarding
the merits of the chapter 93A claim.

Mortgage Co, Inc., 33 N.E.3d 1213, 1226 (Mass. 2015)).[13]

As stated in the complaint, Ocwen, "then holder of [the] mortgage" located on the property, improperly foreclosed on the property "without due process or notification." (Docket Entry # 2-3, ¶ 2). The complaint further states that "Ocwen, its assigns, nominees, or legal counsel never provided any notice of the foreclosure sale written or oral." (Docket Entry # 2-3, ¶ 3). As noted above, Ocwen and Litton, however, contend that Ocwen provided proper notice of the foreclosure sale "both by way of publication and to [p]laintiff individually." (Docket Entry # 9).

In Massachusetts, the mortgage holder may "'foreclose on a property . . . by exercise of the statutory power of sale, if such power is granted by the mortgage itself.'" Santiago v. U.S. Bank, N.A. for LSF9 Master Participation Trust, 2017 WL 5297907, at *3 (D. Mass. Nov. 13, 2017) (quoting U.S. Bank N.A. v. Ibanez, 941 N.E.2d 40, 49 (Mass. 2011)). The "statutory power of sale" is set out in Massachusetts General Laws chapter 183, section 21 ("chapter 183"). Under this statute, if a mortgage provides for a power of sale, the mortgagee, in exercising the power, may foreclose without obtaining prior

---

[13]  Although the Massachusetts Supreme Judicial Court ("SJC") in Pinti limited the decision to prospective foreclosures, it applies to the 2016 foreclosure.

judicial authorization "'upon any default in the performance or observance'" of the mortgage, including nonpayment of the mortgage loan.  Eaton v. Federal Nat. Mortg. Ass'n, 969 N.E.2d 1118, 1127 (Mass. 2012) (quoting chapter 183); accord Pinti v. Emigrant Mortgage Co., Inc., 33 N.E.3d at 1218.

For a foreclosure sale pursuant to the power of sale to be valid under chapter 183, however, the mortgagee must "first comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale."  Id.; Pinti v. Emigrant Mortgage Co., Inc., 33 N.E.3d at 1218-19.  Additional "'statutes relating to the foreclosure of mortgages by the exercise of a power of sale'" are set out in Massachusetts General Laws chapter 244, sections 11 to 17C.  Eaton v. Federal Nat. Mortg. Ass'n, 969 N.E.2d at 1128 (quoting chapter 183).  Principal among these is Massachusetts General Laws chapter 244, section 14 ("section 14"), which governs the procedure for providing proper notice of foreclosure under the power of sale.  See id.; Santiago v. U.S. Bank, N.A. for LSF9 Master Participation Trust, 2017 WL 5297907, at *3.  The language in relevant part states:

> The mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, . . . may, upon breach of condition and without action, do all the acts authorized or required by the power; but no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks, the

first publication of which shall be not less than 21 days
before the day of sale, in a newspaper published in the
city or town where the land lies or in a newspaper with
general circulation in the city or town where the land lies
and notice of the sale has been sent by registered mail to
the owner or owners of record of the equity of redemption
as of 30 days prior to the date of sale, said notice to be
mailed by registered mail at least 14 days prior to the
date of sale to said owner or owners . . ..

Mass. Gen. Laws ch. 244, § 14.

In Massachusetts, "strict compliance with the statutory
notice of sale provision is 'essential to the valid exercise of
[the] power of sale.'" Culhane v. Aurora Loan Servs. of Neb.,
826 F. Supp. 2d 352, 362 (D. Mass. 2011) (quoting U.S. Bank N.A.
v. Ibanez, 941 N.E.2d 40, 50 (Mass. 2011)). Further, the
Massachusetts Supreme Judicial Court ("SJC") has held that a
foreclosing bank's "'strict compliance with the notice of
default required by paragraph 22 [of the mortgage] was necessary
in order for a foreclosure sale to be valid.'" Paiva v. Bank of
New York Mellon, 120 F. Supp. 3d 7, 10 (D. Mass. 2015) (quoting
Pinti v. Emigrant Mortgage Company, Inc., 33 N.E.3d at 1226).
The SJC in Pinti held that a failure to strictly comply with the
notice of default required in paragraph 22 of a mortgage renders
the foreclosure sale void. Pinti v. Emigrant Mortg. Co., Inc.,
33 N.E.3d at 1224-25 ("provisions of paragraph 22 constitute
'terms of the mortgage' governing the power of sale, and that,
in order to conduct a valid foreclosure, Emigrant was obligated
to comply strictly with paragraph 22's notice of default

provisions"). The notice requirements in paragraph 22 additionally mandate that the "Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law." (Docket Entry # 9-2, ¶ 22). Paragraph 22 also dictates the inclusion of certain language in the notice of default that defendants must send to plaintiff before invoking the statutory power of sale. For example, the notice of default must include "the action required to cure the default." (Docket Entry # 9-2, ¶ 22).

In the case at bar, the complaint states that Ocwen did not provide notice of the foreclosure sale. Plaintiff contends that the complaint therefore pleads a plausible claim to declare the 2016 foreclosure void. (Docket Entry # 23). According to the Affidavit of Sale and the attached newspaper notice, however, a notice of foreclosure was published in the *Milton Times* on August 25, September 1, and September 8, 2016.[14] Additionally, the Affidavit of Sale states that HSBC provided notice to plaintiff individually and "complied with Chapter 244, Section

---

[14] The Affidavit of Sale states that the *Milton Times* is "a newspaper purporting to be published in Milton, Massachusetts and having a circulation therein." (Docket Entry # 9-4). In addition, the foreclosure sale occurred on November 17, 2016, more than 21 days after the first notice of sale was published in the *Milton Times*. (Docket Entry # 9-4).

14 of the Massachusetts General Laws . . . by causing to be
mailed the required notices, certified mail, return receipt
requested." (Docket Entry # 9-4).  Whether plaintiff actually
received notice of the sale is not relevant.  See Dooling v.
James B. Nutter & Co., 139 F. Supp. 3d 505, 512 (D. Mass. 2015)
(Massachusetts law "is clear; the requirement that the notice be
mailed to the owner of the relevant property is satisfied by
mailing and nonreceipt is irrelevant").  In addition to notice
by publication, section 14 of chapter 244 requires notice to the
property owner, plaintiff, "by registered mail at least 14 days
prior to the date of sale."  Mass. Gen. Laws ch. 244, § 14;
Mass. Gen. Laws ch. 4, § 7 ("'[r]egistered mail,' when used with
reference to the sending of notice or of any article having no
intrinsic value shall include certified mail").  The Affidavit
of Sale states that HSBC complied with section 14 by "mail[ing]
the required notices, certified mail, return receipt requested."
(Docket Entry # 9-4).

Defendants submit the affidavit trumps the statements in
the complaint.  (Docket Entry # 9).  It is true that "[w]hen 'a
written instrument contradicts allegations in the complaint to
which it is attached, the exhibit trumps the allegations.'"
Frederick v. State of New Hampshire, 2016 WL 4382692, at *1
(D.N.H. Aug. 16, 2016) (quoting Clorox Co. P.R. v. Proctor &
Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000))

(emphasis added); accord Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002) (when "complaint annexes and incorporates by reference a written instrument, any inconsistencies between the complaint and the instrument must be resolved in favor of the latter"). The complaint, however, did not attach the Affidavit of Sale.

Even assuming for purposes of argument that this principle applies to publically recorded documents filed by an opposing party, chapter 183 requires compliance with the terms of the mortgage to exercise the statutory power of sale. See Mass. Gen. Laws ch. 183, § 21. The complaint's statements regarding a lack of notice are sufficient to set out a plausible breach of contract claim that defendants did not comply with paragraph 22. (Docket Entry # 2-3, ¶¶ 2, 3) (stating that Ocwen did not provide notice of the foreclosure and foreclosed on the property without notification). Paragraph 22 requires the notice of default to contain the aforementioned language. See Pinti v. Emigrant Mortgage Co, Inc., 33 N.E.3d at 1226. The fact that the Affidavit of Sale states "that the requirements of the power of sale included in the mortgage and of the law have been complied with in all respects" may provide a basis for summary judgment but it does not provide a sufficient basis to dismiss the breach of contract claim, i.e., breach of paragraph 22 of the mortgage, given the aforementioned statements in the pro se

complaint.  The complaint does not attach the notice of default
and defendants do not provide the notice which, in any event,
may not fall within an exception to Rule 12(b)(6)'s restriction
to the facts in the complaint.  The breach of contract claim
based on a breach of the contractual notice required under
paragraph 22 therefore survives the motion to dismiss.  For
similar reasons, the claim to declare the foreclosure void
and/or rescind the foreclosure sale based on lack of notice
likewise survives.

B.    Notice under the Due Process Clause

The complaint also alleges that defendants' alleged
improper notice of the foreclosure sale violated plaintiff's
rights under the Due Process Clause.  Specifically, the
complaint states that Ocwen improperly foreclosed on the
property "without due process" and that plaintiff was never
provided any notice of the foreclosure sale, "written or oral."
(Docket Entry # 2-3, ¶¶ 2-3).

"Due process does not require a property owner to receive
actual notice of foreclosure proceedings, only 'notice
reasonably calculated, under all the circumstances, to apprise
interested parties of the pendency of the action and afford them
an opportunity to present their objections.'"  Town of Russell
v. Barlow, No. 03 TL 130055 (RBF), 2016 WL 3745960, at *13
(Mass. Land Ct. July 13, 2016) (quoting Jones v. Flowers, 547

21

U.S. 220, 226 (2006)); see Town of Andover v. State Financial
Services, Inc., 736 N.E.2d 837, 839 (Mass. 2000).  Without
additional "reasonable steps," newspaper publication is not
sufficient when mail sent to the owner is returned unclaimed.
See Jones v. Flowers, 547 U.S. at 234.  The complaint states
that Ocwen did not provide "any notice of the foreclosure."
(Docket Entry # 2-3, ¶¶ 2, 3).  Accordingly, the published
notices in the *Milton Times* are not necessarily sufficient in
the context of the complaint which states that Ocwen did not
provide notice.

Although the due process claim therefore survives the
motion to dismiss, it remains vulnerable given the apparent
absence of state action.  See Cullen v. U.S. Bank Trust, N.A.,
Civil Action No. 16-12641-PBS, 2017 WL 3634089, at *1 (D. Mass.
July 12, 2017).  The court in Cullen addressed the issue of
whether the Massachusetts non-judicial foreclosure statute
violated the federal and state constitutions.  Id. at *1.  The
court cited to a recent First Circuit decision, Grapentine v.
Pawtucket Credit Union, 755 F.3d 29, 34 (1st Cir. 2014), which
rejected a due process challenge to the Rhode Island non-
judicial foreclosure statute due to the absence of state action.
Relying on Grapentine, the Cullen court also rejected the due
process claim because plaintiff failed to point out a relevant
distinction between the Massachusetts and Rhode Island

foreclosure statutes.  Cullen, 2017 WL 3634089, at *1.

III.  Breach of Good Faith and Reasonable Diligence

Ocwen and Litton next argue that to the extent plaintiff suggests the foreclosure sale should not have occurred while he was allegedly attempting to secure a loan modification, such a claim also fails.[15]  (Docket Entry # 9).  The complaint states that upon submitting documentation for a loan modification, plaintiff never received any confirmation or final communication with respect to his application.  (Docket Entry # 4).  Ocwen and Litton contend, however, that a mortgagee is not required to refrain from foreclosure while a mortgagor's loan modification is pending.  (Docket Entry # 9).

Under Massachusetts law, "'a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.'"  Figueroa v. Fed. Nat'l Mortg. Ass'n, 2013 WL 2244348, at *4 (D. Mass. May 20, 2013) (quoting West Roxbury Co-op Bank v. Bowser, 87 N.E.2d 113, 115 (Mass. 1949)).  This duty of good faith and reasonable diligence, however, "does not require a mortgagee to refrain from foreclosure while a mortgagor's application for a loan modification is pending."

---

[15]  As indicated in the procedural background, the complaint does not, at present, set out a breach of the duty of good faith claim.  To complete the record, this court addresses the matter in light of defendants' argument.

Figueroa v. Fed. Nat'l Mortg. Ass'n, 2013 WL 2244348, at *4; see also Peterson v. GMAC Mortg., LLC, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011) ("Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults") (citing Carney v. Shawmut Bank, N.A., 2008 WL 4266248, at *3 (Mass.App.Ct.2008))).

The complaint does not specify when the loan was in the modification process (Docket Entry # 2-3, ¶ 4) and the Affidavit of Sale provides that plaintiff was in default prior to the foreclosure sale (Docket Entry # 9-4).  Assuming arguendo the modification request was pending at the time of the foreclosure, defendants did not breach the duty of good faith and reasonable diligence by foreclosing on the property.  Because the duty of good faith and reasonable diligence does not require a mortgagee to refrain from foreclosure while a mortgagor's application for a loan modification is pending, see Figueroa v. Fed. Nat'l Mortg. Ass'n, 2013 WL 2244348, at *4, in order to find that Ocwen and Litton wrongfully foreclosed on the property, there needs to be a contractual duty.  See Peterson v. GMAC Mortg., LLC, 2011 WL 5075613, at *6.  There is no provision in the mortgage, however, that imposes a duty on the defendants to consider a loan modification prior to foreclosure in the event of a default.  See MacKenzie v. Flagstar Bank, FSB, 738 F.3d

486, 493 (1st Cir. 2013).  Thus, to the extent plaintiff suggests that Ocwen and Litton wrongfully foreclosed on the property while he was attempting to secure a loan modification and thereby breached the aforementioned duty of good faith and reasonable diligence, such a claim is without merit.

IV.  Remaining Allegations

As a final matter, Ocwen and Litton move to dismiss the breach of contract claim under Rule 12(b)(6) and Rule 8. (Docket Entry # 9).  The complaint sets out a remaining allegation of breach of contract regarding purported promises made to refinance and "take money out of the loan for home repairs."[16]  (Docket Entry # 2-3, ¶ 1).  The complaint also asserts defendants misapplied plaintiff's payments to his account.  (Docket Entry # 2-3, ¶¶ 5, 7).  Ocwen and Litton contend that plaintiff's allegations are "vague, disjointed and conclusory, and importantly, untethered to any actual cause of action against Defendants."  (Docket Entry # 9).

Rule 8 requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In addition, there must be "'sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it

---

[16]  As previously discussed, the breach of contract claim based on a lack of notice survives dismissal.

rests.'" Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 46 (1st Cir. 2011) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 8 (1st Cir. 2009)). That is, the plain statement must "possess enough heft to show that the pleader is entitled to relief," id., and it requires "'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Here, the applicable paragraph as to the payments in the complaint simply states that "Fremont Investment and Loan, Inc., [Litton] Loan Servicing, Inc., and Ocwen Loan Servicing, Inc., received mortgage payments on my account but failed to properly account for same." (Docket Entry # 2-3, ¶ 7). Plaintiff also never received a response to a request as to how three payments were applied to the mortgage loan. (Docket Entry # 2-3, ¶ 5). Ocwen and Litton are correct in pointing out that the aforementioned allegations are "untethered to any actual cause of action." (Docket Entry # 9). Even after drawing all reasonable inferences in favor of plaintiff, it is unclear from the complaint whether plaintiff is asserting a cause of action for breach of contract, see, e.g., Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 232 (1st Cir. 2013) (plaintiff must show that "a valid contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result

of the breach"), or an accounting, see, e.g., Chedd-Angier Prod. Co., Inc. v. Omni Publ'ns Int'l, Ltd., 756 F.2d 930, 937 (1st Cir. 1985) ("an equitable accounting is available only if there exists a fiduciary or trust relationship between the parties"). Due to this ambiguity and lack of detail regarding the misapplication of payments in the context of a loan that spans an 11-year time period,[17] the complaint fails to provide Ocwen and Litton with fair notice of the claim and the grounds upon which it rests.   See Colon-Fontanez v. Municipality of San Juan, 660 F.3d at 46.  As such, the "claim" regarding the misapplication of payments fails to meet Rule 8 pleading standards and is subject to dismissal.

Similarly, Ocwen and Litton contend that the second allegation regarding promises that plaintiff could refinance the loan after three months and use the loan for home repairs fails under Rule 8.  (Docket Entry # 9).  The complaint states plaintiff was told that "after three months [he] could refinance and lower [his] payments" and that he "could take money out of the loan for home repairs."  (Docket Entry # 2-3, ¶ 1).  The complaint, however, fails to provide any further detail surrounding which defendant made the promises and whether

---

[17]  Plaintiff filed the complaint no earlier than February 2017 (Docket Entry # 2, p. 1, ¶ 1) (Docket Entry # 10, pp. 1, 3, 12), more than 11 years after he executed the loan documents. (Docket Entry # 2-3, p. 2).

plaintiff was ever denied the opportunity to act upon these
purported assurances.  As such, it is unclear if plaintiff set
forth a cause of action for breach of contract and further,
which defendant plaintiff is asserting this claim against.  The
complaint thus lacks sufficient detail "to give a defendant fair
notice of the claim and the grounds upon which it rests."  See
Colon-Fontanez v. Municipality of San Juan, 660 F.3d at 46.
Ocwen and Litton's argument that this allegation is "vague" and
"untethered to any actual cause of action" (Docket Entry # 9, p.
6) is therefore well taken.  Accordingly, the breach of contract
claim regarding promises that plaintiff could refinance the loan
after three months and use the loan for home repairs is
dismissed.

As a final matter, plaintiff relies on a settlement
agreement in the case of Consumer Financial Protection Bureau,
et als v. Ocwen Loan Servicing, LLC, et al, brought in the
United States District Court in the District of Columbia.
(Docket Entry # 23).  Plaintiff contends that this settlement
agreement, entered into by defendants and the Consumer Financial
Protection Bureau ("CFBP"), acknowledged that "Ocwen engaged in
practices that harmed consumers," including, for example,
"failing to timely and accurately apply payments made by
borrowers and failing to maintain accurate account statements."
(Docket Entry # 23).  Assuming that plaintiff seeks to use this

settlement to bolster the aforementioned chapter 93A claim, the settlement is irrelevant to the dispositive issue at this point in time, i.e., the absence of a demand letter.  Irrespective of whether the demand letter requirement was satisfied, however, numerous courts, both in the District of Columbia and elsewhere, have concluded that an individual borrower, such as plaintiff, who is not a party to a consent judgment, has no standing to enforce any obligation imposed on the parties to the consent judgment.  Consumer Financial Protection Bureau v. Ocwen Financial Corporation, Civil Action No. 13-2025, 2014 WL 12772262, at *2 (D.D.C. Dec. 16, 2014); see, e.g., Shatteen v. JPMorgan Chase Bank, 519 Fed. Appx. 320, 321 (5th Cir. 2013); Adams v. Bank of New York Mellon, Civil Action No. 13-509-JD, 2014 WL 3850326, at *1 (D.N.H. Aug. 5, 2014); Fontaine v. JPMorgan Chase Bank, Civil Action No. 13-1892-KBJ, 2014 WL 2000346, at *5 (D.D.C. May 16, 2014).

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[18] that the motion to dismiss (Docket Entry # 8) be

---

[18]  Any objection to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  See Fed. R. Civ. P. 72(b).  Any party may respond to another party's objection within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.

**ALLOWED** in part and **DENIED** in part, and that the chapter 93A claim be **DISMISSED** without prejudice.  Plaintiff may file a motion for leave to amend the chapter 93A claim to comply with the demand letter requirement in 30 days.

/s/ Marianne B. Bowler
_____
**MARIANNE B. BOWLER**
United States Magistrate Judge
