# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANTHONY LYDON BENJAMIN        :
            :
       Plaintiff,          :
            :
v.                     :     C.A. No.:    1:17-cv-11727
            :
FREMONT INVESTMENT & LOAN,   :
LITTEN LOAN SERVICING, LLP,    :
OCWEN LOAN SERVICING, LLP    :
            :
       Defendants.       :

## AFFIDAVIT OF HOWARD R. HANDVILLE

I, Howard R. Handville, do depose and state that:

1. I make this Affidavit in support of Defendant Litton Loan Servicing, LP and Ocwen Loan Servicing, LLC. I hold the position of Senior Loan Analyst at Ocwen Financial Corporation, whose indirect subsidiary is Ocwen Loan Servicing, LLC ("Ocwen"), the mortgage loan servicer for Defendant. I have personal knowledge of the matter set forth herein, or alternatively, I have ascertained the information herein provided based upon the business records of Ocwen, and would be confident to testify thereto. The information from this Affidavit is taken from the business records that include physical or electronic records of loan activity, events and transactions ("records").

2. In my capacity as Senior Loan Analyst, I am responsible for reviewing certain mortgage loans serviced by Ocwen, including the mortgage loan and the issues in this case. I have personal knowledge of Ocwen procedures for creating and maintaining the records. It is Ocwen's custom and practice that such records are: (a) made at or near the time of the occurrence of the matters; (b) made by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (c) kept in the course of Ocwen's regularly conducted business activities. I am familiar with and have access to the records for the subject loan, which I have reviewed to verify the accuracy of this Affidavit. Each of the documents attached to this Affidavit is a business record.

3. The records establish that "Plaintiff" Anthony Lydon Benjamin (the "Borrower") executed a Promissory Note in the amount of $340,800.00 with a mortgage in the same amount to Mortgage Electronic Registration Systems, Inc. (MERS), acting as nominee for co-defendant Fremont Investment & Loan ("Fremont") and its successors and assigns encumbering the property. A true accurate copy of the Promissory Note ("Note") is attached hereto as Exhibit 2-A

4. The records establish that the Note was secured by a mortgage ("Mortgage") executed on the same date in favor of MERS acting as nominee for Fremont on the property. A true accurate copy of the Mortgage is attached hereto as Exhibit 2-B.

5. The records establish that the Note and Mortgage required the borrowers to pay principal and interest on a monthly basis. (See Exhibit 2-A and 2-B).

6. The records establish that MERS as nominee for Fremont assigned the mortgage to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E on or about September 9, 2014, which was recorded with the Norfolk County Registry of Deeds at Book 32560 Page 199. A true and accurate copy of the Assignment is attached hereto as Exhibit 2-C.

7. The records establish that at all times relevant hereto Ocwen Loan Servicing, LLC acted as the servicer of the loan. The records further establish that HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E held the mortgage at all times relevant to the foreclosure proceedings by virtue of the Assignment.

8. The records establish that the borrowers were in default when the property was sold at a foreclosure sale.

9. The records establish that on or about June 24, 2014 Ocwen mailed to the borrower a right to cure letter. A true and accurate copy of the notice is attached hereto as Exhibit 2-D.

10. The records establish that on or about October 11, 2014 Ocwen mailed to the borrower a notice of default letter. A true and accurate copy of the notice is attached hereto as Exhibit 2-E.

11. The records establish that Ocwen filed an Affidavit demonstrating compliance with Massachusetts General Laws Ch. 244 § 35B, recording same at Book 34020 Page 146 in the Norfolk County Registry of Deeds on April 21, 2016. A true and accurate copy of the Affidavit is attached hereto as Exhibit 2-F.

12. The records establish that Ocwen recorded an Affidavit attesting that HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E is both the foreclosing mortgagee and holder of the note in compliance with Massachusetts General Laws Ch. 244 § 35C, recording same at Book 34020 Page 148 in the Norfolk County Registry of Deeds on or about April 21, 2016. A true and accurate copy of the Affidavit is attached hereto as Exhibit 2-G.

13. The records establish that Ocwen recorded a "Pinti" Affidavit testifying that the Notice of Cure letter was sent on or before July 17, 2015 as recorded at Book 34756 Page 284. A true and accurate copy of the Affidavit is attached hereto as Exhibit 2-H.

14. The records establish that on or about July 1, 2016 Korde & Associates, P.C. ("Korde") as attorney for the Defendants and pursuant to Massachusetts General Laws Ch. 244 §14,

2

sent a notice of foreclosure sale ("foreclosure notice"), and notice of mortgagees sale of real estate, via regular and certified US Mail, to the borrowers.  A true and accurate copy of the document reflected is attached hereto as <u>Exhibit 2-I.</u>

15. The records establish that beginning on or about August 25, 2016, September 1, 2016, and September 8, 2016 a foreclosure sale notice was published in the Milton Times Newspaper having a general circulation in Milton, Massachusetts.  A true and accurate copies of the Affidavit and related Notice are attached hereto as <u>Exhibit 2-J.</u>

16. The records establish that the foreclosure sale auction occurred on or about November 17, 2016 at which auction Defendant was the highest bidder for the property.  Thereafter Ocwen, as attorney for Defendants, executed a foreclosure deed transferring the property which was recorded on or about December 13, 2016 at Book 34756 Page 280 in the Norfolk County Registry of Deeds.  A true and accurate copy of the Foreclosure Deed is attached hereto as <u>Exhibit 2-K.</u>

Subscribed and Sworn to under the pains and penalties of perjury on this 20th day of May, 2019 by Ocwen Loan Servicing, LLC as servicer for HSBC Bank USA, National Association, as Trustee for Fremont Home Loan and Trust 2005-E, Mortgage Backed Certificates, Series 2005-E

_____

Howard R. Handville

Sr. Loan Analyst; Authorized representative

State of Florida

County of Palm Beach

_____
Notary Public      **Noemi Morales**

Notary Public State of Florida
Noemi Elizabeth Morales
My Commission GG 162114
Expires 11/21/2021

My commission expires:  11/21/21

3

71518358v.1

# EXHIBIT 2-A

# ADJUSTABLE RATE NOTE

### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**September 23, 2005**           **BREA, CA 92821**
[Date]                                           [City]                                        [State]
**10 LOTHROP AVENUE    MILTON, MA 02186**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $        **340,800.00**                (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FREMONT INVESTMENT & LOAN**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.750** %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**\*SEE ADJUSTABLE RATE NOTE RIDER ATTACHED HERETO AND MADE A PART HEREOF**

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **November 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2035**                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2727 E IMPERIAL HIGHWAY, BREA CA 92821**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $        **2,201.00**        . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT**

VMP-815N (0404)            Form 5520 3/04
VMP Mortgage Solutions (800)521-7291
Page 1 of 4            Initials: L.B

**\*SEE ADJUSTABLE RATE NOTE RIDER ATTACHED HERETO AND MADE A PART HEREOF**

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)   Change Dates**

The interest rate I will pay may change on the first day of **October 1, 2007** , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index.'

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Nine Hundred Seventy-Three Thousandths** percentage points ( **5.9737** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.750** % or less than **7.7500** %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than **1.5000** from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than **13.7500** % or less than **7.7500** %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.0** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**\*SEE ADJUSTABLE RATE NOTE RIDER ATTACHED HERETO AND MADE A PART HEREOF**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
**LYNDON BENJAMIN**        -Borrower                                                            -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                                            -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                                            -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                                            -Borrower


*[Sign Original Only]*

-815N (0404)                        Page 4 of 4                        Form 5520 3/04

Pay to the order of

without recourse.

Fremont Investment & Loan

Michael Koch

Vice President

# RIDER TO ADJUSTABLE RATE NOTE FOR TEMPORARY INTEREST-ONLY PAYMENT SCHEDULE

THIS RIDER TO ADJUSTABLE RATE NOTE FOR TEMPORARY INTEREST-ONLY PAYMENT SCHEDULE is made this 23rd          day of  September          , 2005        , and is incorporated into and shall be deemed to amend, and supplement the Adjustable Rate Note dated **September 23, 2005**          given by the undersigned (the "Borrower") to **FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the Property located at:

**10 LOTHROP AVENUE   MILTON, MA 02186**

(Property Address)

**A. Section 3 of the Adjustable Rate Note is amended and restated in its entirety to read as follows:**

### 3.   PAYMENTS

#### (A)   Time and Place of Payments

I will make a payment on the first day of every month, beginning on **November 1, 2005**   .

Before the First Principal and Interest Payment Due Date, as described in Section 4(G) of this Note, on each payment due date my monthly payment will equal one-twelfth of one year's interest that would be due on the unpaid principal balance of this Note that I am expected to owe on the same day one month prior to the payment due date at the interest rate that is provided for in accordance with Section 2 and Section 4 of this Note.

Beginning on the First Principal and Interest Payment Due Date, I will make monthly payments of principal and interest. These payments will be calculated as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal, interest and any other charges that I may owe under this Note.

Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before principal. If, on **October 1, 2035**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2727 E IMPERIAL HIGHWAY, BREA CA 92821**

or at a different place if required by the Note Holder.

#### (B)   Amount of My Initial Monthly Payments

My initial monthly payment will be in the amount of U.S. $ **2,201.00**          . This amount will change.

#### (C)   Monthly Payment Changes

Before the First Principal and Interest Due Date, my monthly payments will change to reflect changes in the unpaid principal balance of this Note. In addition, following the first Change Date, my monthly payments will change to reflect changes in the interest rate that I must pay.

Beginning with the First Principal and Interest Due Date, my monthly payment will change to include both principal and interest. In addition, my monthly payment will change to reflect changes in the unpaid principal balance of this Note and changes in the interest rate that I must pay.

L.B

IOARM1RD XMM 12/13/04

**B.   Section 4 of the Adjustable Rate Note is amended and restated in its entirety to read as follows:**

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)   Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **October 1, 2007**     , and the adjustable interest rate I will pay may change on that day every sixth month thereafter.   The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B)   The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index.   The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal.   The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin, as defined below.   The Note Holder will give me notice of this choice.

### (C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Nine Hundred Seventy-Three** percentage point(s) ( **5.9737**    %) (the "Margin") to the Current index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) of this Note, this rounded amount will be my new interest rate until the next Change Date.

For each Change Date prior to the First Principal and Interest Change Date (as described in Section 4(G) of this Note), the Note Holder will then determine the amount of the monthly payment that is equal to one-twelfth of one year's interest that would be due on the unpaid principal balance of this Note that I am expected to owe on the Change Date at my new interest rate.   The result of this calculation will be the new amount of my monthly payment until the monthly payment changes again in accordance with this Note.

For each Change Date beginning with the First Principal and Interest Change Date (as described in Section 4(G) of this Note), the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance that I am expected to owe at the Change Date in full on the Maturity Date, together with interest at my new interest rate, in substantially equal installments. The result of this calculation will be my new monthly payment until the monthly payment changes again in accordance with this Note.

### (D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  **9.750** % or less than **7.7500**     %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one and one-half percentage points (1.50%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.7500**     % or less than **7.7500**       %.

### (E)   Effective Date of Changes

My new interest rate will become effective on each Change Date.   I will pay the amount of my new monthly payment beginning on the first monthly payment due date after each Change Date until the amount of my monthly payment changes again.

IOARM2RD XMM 12/12/04

h.B

**(F) Effective Date of Changes**

The Note Holder will deliver or mail to me such notice of changes in my interest rate and the amount of my monthly payments as may be required by law. The notice will include information required by law to be given to me, and also the telephone number of a person who will respond to any question I may have regarding the notice.

**(G) First Principal and Interest Payment Due Date and First Principal and Interest Change Date**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") will be **November 1, 2010**    . The Change Date immediately preceding the First Principal and Interest Payment Due Date is called the "First Principal and Interest Change Date."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider to Adjustable Rate Note for Temporary Interest-Only Payment Schedule.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____(Seal)     _____(Seal)
LYNDON BENJAMIN


_____(Seal)     _____(Seal)

IOARM3RD XMM 12/13/04

# EXHIBIT 2-B

Return To:
**FREMONT INVESTMENT & LOAN**
**P.O. BOX 34078**
**FULLERTON, CA  92834-34078**

Prepared By:
**BARBARA LICON**

**6000182764**

Bk 22934 Pg27 #125534
09-26-2005 @ 03:35p

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA
CERTIFY

William P O'Donnell
WILLIAM P. O'DONNELL, REGISTER

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

MIN 1001944-6000182764-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 23, 2005**
together with all Riders to this document.
(B) **"Borrower"** is **LYNDON BENJAMIN, AN UNMARRIED PERSON**

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**MASSACHUSETTS**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3022 1/01

VMP-6A(MA) (0401)
Page 1 of 15          Initials: L.B
VMP Mortgage Solutions (800)521-7291



20

Bk 22934   Pg 28   #125534

**(D) "Lender" is FREMONT INVESTMENT & LOAN**

Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**
Lender's address is
**2727 E IMPERIAL HIGHWAY, BREA CA 92821**
**(E) "Note"** means the promissory note signed by Borrower and dated **September 23, 2005**
The Note states that Borrower owes Lender **Three Hundred Forty Thousand, Eight Hundred and No/100 --------------------------------------** Dollars
(U.S. $     **340,800.00**     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     **October 1, 2035**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Bk 22934   Pg 29 #125534

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County**                                          of **NORFOLK**                                          :

[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]:

**SEE ATTACHED LEGAL DESCRIPTION**

Parcel ID Number: **M:CB:014L:21**                     which currently has the address of
**10 LOTHROP AVE**                                                                                    [Street]
**MILTON**                                                         [City] , Massachusetts **02186**          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: _____

VMP-6A(MA) (0401)                      Page 3 of 15                           Form 3022  1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower



shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the

Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations

contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection



with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.



Bk 22934   Pg 40 #125534

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                     LYNDON BENJAMIN        -Borrower


_____                    _____ (Seal)
                                                                            -Borrower


_____ (Seal)                     _____ (Seal)
                   -Borrower                                                -Borrower


_____ (Seal)                     _____ (Seal)
                   -Borrower                                                -Borrower


_____ (Seal)                     _____ (Seal)
                   -Borrower                                                -Borrower

Bk 22934  Pg 41 #125534

**COMMONWEALTH OF MASSACHUSETTS,**                                    _Suffolk_   **County ss:**

   On this   22   day of   September    2005 , before me, the undersigned notary public,
personally appeared

           Lyndon   Benjamin

proved to me through satisfactory evidence of identification, which was/were   _MA DL_
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that
he/she/they signed it voluntarily for its stated purpose.
My Commission Expires:
(Seal)

                                                       Notary Public

Bk 22934  Pg 42 #125534

# ADJUSTABLE RATE RIDER

    **THIS ADJUSTABLE RATE RIDER** is made this **23rd** day of **September , 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**10 LOTHROP AVENUE   MILTON, MA 02186**

    **ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.**    **Sections 3 and 4 of the Note state as follows:**

**3.**    **PAYMENTS**
    **(A) Time and Place of Payments**
    I will make a payment on the first day of every month, beginning on **November 1, 2005** . Before the First Principal and Interest Payment Due Date, as described in Section 4 of this Note, my payment will equal one-twelfth of one year's interest that would be due on an amount equal to the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
    I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal, interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before principal. If, on **October 1, 2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at **2727 E IMPERIAL HIGHWAY, BREA CA 92821**
or at a different place if required by the Note Holder.

    **(B) Amount of My Initial Monthly Payments**
My initial monthly payment will be in the amount of U.S. $ **2,201.00** . However, if I make a partial principal prepayment prior to the first Change Date, my monthly payment will decrease for the remainder of the term that my scheduled payments consist only of interest.

    **(C) Monthly Payment Changes**
Beginning with the First Principal and Interest Due Date, my monthly payment will change, as described in Section 4 of this Note. The Note Holder will notify me prior to the date of changes in my monthly payment.

**4.**    **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first

IOARMP1  jxn  06/06/03

Bk 22934   Pg 43   #125534

day of **October 1, 2007**      , and the adjustable interest rate I will pay may change on that date every sixth month thereafter.   The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index.    The "Index" is the average of Interbank offered rates for six-month U.S. dollar-denominated deposits in the London market based on quotations of major banks based on the London Interbank Offered Rate ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin, as defined below.  The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Nine Hundred Seventy-Three Thousandths** percentage points (**5.9737**    %) (the "Margin") to the Current Index.   The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).    Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.   The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.750**    % or less than **7.7500**    %.   Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **One and One-Half**                     percentage point(s)  (**1.5000**   %) from the rate of interest I have been paying for the preceding month.   My interest rate will never be greater than **13.7500**   % or less than **7.7500**   %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date.   I will pay the amount of my new monthly payment beginning on the first monthly payment date after each Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.   The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

 L. B.

IOARMP2  jxn 06/10/03

Bk 22934   Pg 44  #125534

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not an natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.


Borrower  **LYNDON BENJAMIN**                           9/23/05
                                                        Date


Borrower _____                    Date


Borrower _____                    Date


Borrower _____                    Date


IOARMP3  TG  03/24/04                   Page 3 of 3

Bk 22934   Pg 45 #125534

# EXHIBIT A
# LEGAL DESCRIPTION

The land, together with the buildings thereon, situated in Milton, Massachusetts being shown as Lot 11 on plan by G.L. Richardson, dated May 4, 1889, recorded with Norfolk Deeds, Book 623, Page 263, bounded and described as follows:

SOUTHEASTERLY  by Lot 12 on said plan, 86.5 feet;

SOUTHWESTERLY by Lothrop Avenue, 50 feet;

NORTHWESTERLY by Lot 10 on said plan, 87.5 feet;  and

NORTHEASTERLY by land now or formerly of Churchill, 50 feet.

Containing 4,350 feet of land.

$$$\BA_EXHA.RTF

Bk 22934  Pg 46 #125534

Norfolk County
Registry of Deeds

This page left intentionally blank

# EXHIBIT 2-C

Bk 32560 Pg199 #81100
09-18-2014 @ 12:56p

APN #: M: CB: 014L: 21
Prepared by: Gina Herman/TV
When Recorded Mail To:
Ocwen Loan Servicing, LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835
MERS Ph.#: (888) 679 – 6377
MERS#:1001944-6000182764-1

## ASSIGNMENT OF MORTGAGE
### MASSACHUSETTS

This **ASSIGNMENT OF MORTGAGE** from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.(MERS)**, solely as nominee for FREMONT INVESTMENT & LOAN, its successors and/or assigns, whose address is 1901 E Voorhees Street, Ste C, Danville, IL 61834, PO Box 2026 Flint, MI 48501-2026 ("Assignor) to **HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-E, MORTGAGE-BACKED CERTIFICATES, SERIES 2005-E**, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409, (Assignee) all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the Public Records of **NORFOLK** County, State of **MASSACHUSETTS**, as follows;

Mortgagor: LYNDON BENJAMIN
Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR FREMONT INVESTMENT & LOAN
Document Date: SEPTEMBER 23, 2005
Amount: $ 340,800.00
Recording Date: SEPTEMBER 26, 2005
Book/Volume/Docket/Liber: 22934
Page/Folio: 27
Property address: 10 LOTHROP AVE, MILTON, MA 02186

This Assignment is made without recourse, representation or warranty.

IN WITNESS WHEREOF the Assignor has caused these presents to be executed in its name, by its proper officer thereunto duly authorized, the _____9th_____ day of _____Sept_____, 2014

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS),**
**SOLELY AS NOMINEE FOR FREMONT INVESTMENT & LOAN,**
**ITS SUCCESSORS AND/OR ASSIGNS**

Signed sealed and delivered in the presence of:

BY: _Mary Kam_
NAME: **MARY KAMMEYER**
TITLE: Assistant Secretary

_Karen Smith_     **Karen Smith**

_Cameron Carlson_     **CAMERON CARLSON**

STATE OF IOWA          )
                                      )ss.
COUNTY OF BLACK HAWK  )

The foregoing instrument was acknowledged before me this _____9th_____ day of _____Sept_____, 2014, by _____**MARY KAMMEYER**_____, the Assistant Secretary at MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), SOLELY AS NOMINEE FOR FREMONT INVESTMENT & LOAN, its successors and/or assigns, on behalf of the corporation, He/She is personally known to me.

[Seal:
VICKI POSPISIL
COMMISSION NO.784538
MY COMMISSION EXPIRES
JUNE 10, 2017]

_Vicki Pospisil_
Notary Public –
State of IOWA     **Vicki Pospisil**

WILLIAM P. O'DONNELL, REGISTER
NORFOLK COUNTY REGISTRY OF DEEDS
RECEIVED & RECORDED ELECTRONICALLY

# EXHIBIT 2-D



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

6/24/2014

Loan Number: ████118

VIA First Class Mail
VIA Certified Mail (return receipt requested)
Certified Number: 9214 8901 0881 0902 6368 30
Reference Code: 7090601118

Lyndon Benjamin
Po Box 33
Milton, MA 02186

Property Address: 10 Lothrop Ave,
Milton, MA 02186

## 150 Day Right to Cure Your Mortgage Default

- This is an important notice concerning your right to live in your home. Have it translated at once.
- Esta carta explica sus derechos legales para permanezer en su propiedad de vivienda.  Por favor traduzca esta notificacion imediatamente.
- Este é um aviso importante em relação ao seu dereito de morar na sua residência. Por favor, tem tradizido imediatamente.
- C'est une notification importante concernant votre droit de vivre chez vous. Faites-la traduire immédiatement.
- 这是一则关于您居住权的重要通知, 请儘快安排翻译

RE: 10 Lothrop Ave Milton, MA 02186; loan number 7090601118 with Ocwen Loan Servicing, LLC as servicer for HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E; Mortgage Broker: Quotemaarate.Com Loan Originator: Fremont Investment & Loan

To:  Lyndon Benjamin

We are contacting you because you did not make your monthly loan payment[s] due on 5_1_2006 6_1_2006, 7_1_2006, 8_1_2006, 9_1_2006, 10_1_2006, 11_1_2006, 12_1_2006, 1_1_2007, 2_1_2007, 3_1_2007, 4_1_2007, 5_1_2007, 6_1_2007, 7_1_2007, 8_1_2007, 9_1_2007, 10_1_2007, 11_1_2007, 12_1_2007, 1_1_2008, 2_1_2008, 3_1_2008, 4_1_2008, 5_1_2008, 6_1_2008, 7_1_2008, 8_1_2008, 9_1_2008, 10_1_2008, 11_1_2008, 12_1_2008, 1_1_2009, 2_1_2009, 3_1_2009, 4_1_2009, 5_1_2009, 6_1_2009, 7_1_2009, 8_1_2009, 9_1_2009, 10_1_2009, 11_1_2009, 12_1_2009, 1_1_2010, 2_1_2010, 3_1_2010, 4_1_2010, 5_1_2010, 6_1_2010, 7_1_2010, 8_1_2010, 9_1_2010, 10_1_2010, 11_1_2010, 12_1_2010, 1_1_2011, 2_1_2011, 3_1_2011, 4_1_2011, 5_1_2011, 6_1_2011, 7_1_2011, 8_1_2011, 9_1_2011, 10_1_2011, 11_1_2011, 12_1_2011, 1_1_2012, 2_1_2012, 3_1_2012, 4_1_2012, 5_1_2012, 6_1_2012, 7_1_2012, 8_1_2012, 9_1_2012, 10_1_2012, 11_1_2012, 12_1_2012, 1_1_2013, 2_1_2013, 3_1_2013, 4_1_2013, 5_1_2013, 6_1_2013, 7_1_2013, 8_1_2013, 9_1_2013, 10_1_2013, 11_1_2013, 12_1_2013, 1_1_2014, 2_1_2014, 3_1_2014, 4_1_2014 5_1_2014, 6_1_2014to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E.

You must pay the past due amount of $228546.65 on or before 11/24/2014 which is 150 days from the date of this notice. The past due amount on the date of this notice is specified below:



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

Principal and Interest Payment of $2201 due 5_1_2006 Principal and Interest Payment of $2201 due 6_1_2006, Principal and Interest Payment of $2201 due 7_1_2006, Principal and Interest Payment of $2201 due 8_1_2006, Principal and Interest Payment of $2201 due 9_1_2006, Principal and Interest Payment of $2201 due 10_1_2006, Principal and Interest Payment of $2201 due 11_1_2006, Principal and Interest Payment of $2201 due 12_1_2006, Principal and Interest Payment of $2201 due 1_1_2007, Principal and Interest Payment of $2201 due 2_1_2007, Principal and Interest Payment of $2201 due 3_1_2007, Principal and Interest Payment of $2201 due 4_1_2007, Principal and Interest Payment of $2201 due 5_1_2007, Principal and Interest Payment of $2201 due 6_1_2007, Principal and Interest Payment of $2201 due 7_1_2007, Principal and Interest Payment of $2201 due 8_1_2007, Principal and Interest Payment of $2201 due 9_1_2007, Principal and Interest Payment of $2201 due 10_1_2007, Principal and Interest Payment of $2201 due 11_1_2007, Principal and Interest Payment of $2769 due 12_1_2007, Principal and Interest Payment of $2769 due 1_1_2008, Principal and Interest Payment of $2769 due 2_1_2008, Principal and Interest Payment of $2769 due 3_1_2008, Principal and Interest Payment of $2769 due 4_1_2008, Principal and Interest Payment of $2520.5 due 5_1_2008, Principal and Interest Payment of $2520.5 due 6_1_2008, Principal and Interest Payment of $2520.5 due 7_1_2008, Principal and Interest Payment of $2520.5 due 8_1_2008, Principal and Interest Payment of $2520.5 due 9_1_2008, Principal and Interest Payment of $2520.5 due 10_1_2008, Principal and Interest Payment of $2591.5 due 11_1_2008, Principal and Interest Payment of $2591.5 due 12_1_2008, Principal and Interest Payment of $2591.5 due 1_1_2009, Principal and Interest Payment of $2591.5 due 2_1_2009, Principal and Interest Payment of $2591.5 due 3_1_2009, Principal and Interest Payment of $2591.5 due 4_1_2009, Principal and Interest Payment of $2201 due 5_1_2009, Principal and Interest Payment of $2201 due 6_1_2009, Principal and Interest Payment of $2201 due 7_1_2009, Principal and Interest Payment of $2201 due 8_1_2009, Principal and Interest Payment of $2201 due 9_1_2009, Principal and Interest Payment of $2201 due 10_1_2009, Principal and Interest Payment of $2201 due 11_1_2009, Principal and Interest Payment of $2201 due 12_1_2009, Principal and Interest Payment of $2201 due 1_1_2010, Principal and Interest Payment of $2201 due 2_1_2010, Principal and Interest Payment of $2201 due 3_1_2010, Principal and Interest Payment of $2201 due 4_1_2010, Principal and Interest Payment of $2201 due 5_1_2010, Principal and Interest Payment of $2201 due 6_1_2010, Principal and Interest Payment of $2201 due 7_1_2010, Principal and Interest Payment of $2201 due 8_1_2010, Principal and Interest Payment of $2201 due 9_1_2010, Principal and Interest Payment of $2201 due 10_1_2010, Principal and Interest Payment of $2201 due 11_1_2010, Principal and Interest Payment of $2201 due 12_1_2010, Principal and Interest Payment of $2201 due 1_1_2011, Principal and Interest Payment of $2201 due 2_1_2011, Principal and Interest Payment of $2201 due 3_1_2011, Principal and Interest Payment of $2201 due 4_1_2011, Principal and Interest Payment of $2201 due 5_1_2011, Principal and Interest Payment of $2201 due 6_1_2011, Principal and Interest Payment of $2201 due 7_1_2011, Principal and Interest Payment of $2201 due 8_1_2011, Principal and Interest Payment of $2201 due 9_1_2011, Principal and Interest Payment of $2201 due 10_1_2011, Principal and Interest Payment of $2201 due 11_1_2011, Principal and Interest Payment of $2201 due 12_1_2011, Principal and Interest Payment of $2201 due 1_1_2012, Principal and Interest Payment of $2201 due 2_1_2012, Principal and Interest Payment of $2201 due 3_1_2012, Principal and Interest Payment of $2201 due 4_1_2012, Principal and Interest Payment of $2201 due 5_1_2012, Principal and Interest Payment of $2201 due 6_1_2012, Principal and Interest Payment of $2201 due 7_1_2012, Principal and Interest Payment of $2201 due 8_1_2012, Principal and Interest Payment of $2201 due 9_1_2012, Principal and Interest Payment of $2201 due 10_1_2012, Principal and Interest Payment of $2201 due 11_1_2012, Principal and Interest Payment of $2201 due 12_1_2012, Principal and Interest Payment of $2201 due 1_1_2013, Principal and Interest Payment of $2201 due 2_1_2013, Principal and Interest Payment of $2201 due 3_1_2013, Principal and Interest Payment of $2201 due 4_1_2013, Principal and Interest Payment of $2201 due 5_1_2013, Principal and Interest Payment of $2201 due 6_1_2013, Principal and Interest Payment of $2201 due 7_1_2013, Principal and Interest Payment of $2201 due 8_1_2013, Principal and Interest Payment of $2201 due 9_1_2013, Principal and Interest Payment of $2201 due 10_1_2013, Principal and Interest Payment of $2201 due 11_1_2013, Principal and Interest Payment of



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

$2201 due 12_1_2013, Principal and Interest Payment of $2201 due 1_1_2014, Principal and Interest Payment of $2201 due 2_1_2014, Principal and Interest Payment of $2201 due 3_1_2014, Principal and Interest Payment of $2201 due 4_1_2014Principal and Interest Payment of $2201 due 5_1_2014, Principal and Interest Payment of $2201 due 6_1_2014.

Escrow of $0 due 5_1_2006 Escrow of $0 due 6_1_2006, Escrow of $0 due 7_1_2006, Escrow of $0 due 8_1_2006, Escrow of $0 due 9_1_2006, Escrow of $0 due 10_1_2006, Escrow of $0 due 11_1_2006, Escrow of $0 due 12_1_2006, Escrow of $0 due 1_1_2007, Escrow of $0 due 2_1_2007, Escrow of $0 due 3_1_2007, Escrow of $0 due 4_1_2007, Escrow of $0 due 5_1_2007, Escrow of $0 due 6_1_2007, Escrow of $0 due 7_1_2007, Escrow of $0 due 8_1_2007, Escrow of $0 due 9_1_2007, Escrow of $0 due 10_1_2007, Escrow of $0 due 11_1_2007, Escrow of $0 due 12_1_2007, Escrow of $0 due 1_1_2008, Escrow of $0 due 2_1_2008, Escrow of $0 due 3_1_2008, Escrow of $0 due 4_1_2008, Escrow of $0 due 5_1_2008, Escrow of $0 due 6_1_2008, Escrow of $0 due 7_1_2008, Escrow of $0 due 8_1_2008, Escrow of $0 due 9_1_2008, Escrow of $0 due 10_1_2008, Escrow of $0 due 11_1_2008, Escrow of $0 due 12_1_2008, Escrow of $0 due 1_1_2009, Escrow of $0 due 2_1_2009, Escrow of $0 due 3_1_2009, Escrow of $0 due 4_1_2009, Escrow of $0 due 5_1_2009, Escrow of $0 due 6_1_2009, Escrow of $0 due 7_1_2009, Escrow of $0 due 8_1_2009, Escrow of $0 due 9_1_2009, Escrow of $0 due 10_1_2009, Escrow of $0 due 11_1_2009, Escrow of $0 due 12_1_2009, Escrow of $0 due 1_1_2010, Escrow of $0 due 2_1_2010, Escrow of $0 due 3_1_2010, Escrow of $0 due 4_1_2010, Escrow of $0 due 5_1_2010, Escrow of $0 due 6_1_2010, Escrow of $0 due 7_1_2010, Escrow of $0 due 8_1_2010, Escrow of $0 due 9_1_2010, Escrow of $0 due 10_1_2010, Escrow of $0 due 11_1_2010, Escrow of $0 due 12_1_2010, Escrow of $0 due 1_1_2011, Escrow of $0 due 2_1_2011, Escrow of $0 due 3_1_2011, Escrow of $0 due 4_1_2011, Escrow of $0 due 5_1_2011, Escrow of $0 due 6_1_2011, Escrow of $0 due 7_1_2011, Escrow of $0 due 8_1_2011, Escrow of $0 due 9_1_2011, Escrow of $0 due 10_1_2011, Escrow of $0 due 11_1_2011, Escrow of $0 due 12_1_2011, Escrow of $0 due 1_1_2012, Escrow of $0 due 2_1_2012, Escrow of $0 due 3_1_2012, Escrow of $0 due 4_1_2012, Escrow of $0 due 5_1_2012, Escrow of $0 due 6_1_2012, Escrow of $0 due 7_1_2012, Escrow of $0 due 8_1_2012, Escrow of $0 due 9_1_2012, Escrow of $0 due 10_1_2012, Escrow of $0 due 11_1_2012, Escrow of $0 due 12_1_2012, Escrow of $0 due 1_1_2013, Escrow of $0 due 2_1_2013, Escrow of $0 due 3_1_2013, Escrow of $0 due 4_1_2013, Escrow of $0 due 5_1_2013, Escrow of $0 due 6_1_2013, Escrow of $0 due 7_1_2013, Escrow of $0 due 8_1_2013, Escrow of $0 due 9_1_2013, Escrow of $0 due 10_1_2013, Escrow of $0 due 11_1_2013, Escrow of $0 due 12_1_2013, Escrow of $0 due 1_1_2014, Escrow of $0 due 2_1_2014, Escrow of $0 due 3_1_2014, Escrow of $0 due 4_1_2014Escrow of $0 due 5_1_2014, Escrow of $0 due 6_1_2014.

$77.22 late charge in 11_1_2011 $77.22 late charge in 12_1_2011, $77.22 late charge in 1_1_2012, $77.22 late charge in 2_1_2012, $77.22 late charge in 3_1_2012, $77.22 late charge in 4_1_2012, $78.87 late charge in 5_1_2012, $78.87 late charge in 6_1_2012, $78.87 late charge in 7_1_2012, $78.87 late charge in 8_1_2012, $78.87 late charge in 9_1_2012, $78.87 late charge in 10_1_2012, $79.48 late charge in 11_1_2012, $79.48 late charge in 12_1_2012, $79.48 late charge in 1_1_2013, $79.48 late charge in 2_1_2013, $77.22 late charge in 3_1_2013, $77.22 late charge in 4_1_2013, $77.22 late charge in 5_1_2013, $77.22 late charge in 6_1_2013, $77.22 late charge in 7_1_2013, $77.22 late charge in 8_1_2013, $77.22 late charge in 9_1_2013, $77.22 late charge in 10_1_2013, $77.23 late charge in 11_1_2013, $81.52 late charge in 6_1_2014, $3149.68 late charge from prior servicer, Late charge adjustment of $0.

If you pay the past due amount, and any additional monthly payments, late charges or fees that may become due between the date of this notice and the date when you make your payment, your account will be considered up-to-date and you can continue to make your regular monthly payments.

Make your payment directly to:



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

Ocwen Loan Servicing, LLC
ATTN: Cashiering Department
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Please consider the following:

- you should contact the Homeownership Preservation Foundation (888-995-HOPE) to speak with counselors who can provide assistance and may be able to help you work with your lender to avoid foreclosure. There may be other homeownership assistance available through your lender or servicer;

- you may also contact the Division of Banks (617-956-1500) or visit www.mass.gov/foreclosures to find a foreclosure prevention program near you;

- after 11/24/2014 you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place. Depending on the terms of the loan, there may also be other ways to avoid foreclosure, such as selling your property, refinancing your loan, or voluntarily transferring ownership of the property to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E.

**If you do not pay the total past due amount of $228546.65 and any additional payments that may become due by 11/24/2014 you may be evicted from your home after a foreclosure sale. If HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E forecloses on this property, it means the mortgagee or new buyer will take over the ownership of your home.**

If you have questions, or disagree with the calculation of your past due balance, please contact Ocwen Loan Servicing, LLC as servicer for **HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E** at (800) 746-2936 to obtain information regarding your mortgage. We are available Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 9:00 am to 9:00 pm ET. Or you can submit a written request for the information listed above to:

Ocwen Loan Servicing LLC, Attn: Research Dept
PO Box 24736, West Palm Beach, FL 33416

Sincerely,

Amy Fleitas
Mortgage Default Manager
Enclosed with this notice, there may be additional important disclosures related to applicable laws and requirements that you should carefully review.
Account Number ████118

**Mortgagee Information**

Please Note:



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

Ocwen Loan Servicing, LLC is providing this notice as servicing agent, or otherwise on behalf of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E whose address is 8 East 40th Street- CTLA-Structured Finance, New York, NY 10016.



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

Account Number ▆▆▆▆118

**Disclosures**

Please Note:

This is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt. Any action taken by us is for the sole purpose of protecting our lien interest in your property and is not to recover any amounts from you personally.  If you have surrendered your property during your bankruptcy case, please disregard this notice.

If you are currently in bankruptcy under Chapter 13, you should continue to make payments in accordance with your Chapter 13 Plan and disregard this notice.

You have the right to bring a court action to challenge the existence of the default, or assert other defenses to immediate payment and sale that may be available in your mortgage documents or under applicable law.

If your payment is not accepted or your payment is for less than the total amount due (which we may accept without waiving any of our rights), this matter will not be resolved.

Failure to cure the default on or before the date specified in this notice may result in acceleration of the sums secured by the Mortgage and sale of the Property. Even after the loan has been accelerated, you have the right to reinstate your account up to five days before the foreclosure sale of your home if you: 1) pay the total amount due plus any fees, costs and other amounts chargeable to your account under the terms of the loan documents including all expenses incurred in enforcing the terms of the loan documents such as reasonable attorney's fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting the mortgage holder's interest in the property and rights under the Mortgage. Your obligations under the loan documents will still apply during this time.

Additionally, you have the right to sell the property prior to foreclosure sale and use the proceeds to pay the mortgage in full.

You may have the option of voluntarily granting a deed to the residential mortgage in lieu of foreclosure, depending upon the terms of your residential mortgage and whether or not there are any junior liens encumbering the property.

You may attempt to refinance the obligation by obtaining a new loan, which would fully repay the existing residential mortgage loan.

O C W E N
PO BOX 24646
WEST PALM BEACH, FL 33416-4646

**USPS CERTIFIED MAIL™**

9214 8901 0881 0902 6368 30

LYNDON BENJAMIN
PO BOX 33
MILTON  MA 02186

Loan Number: ███ 118

# EXHIBIT 2-E



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

10/11/2014

Loan Number: ██████118
**VIA First Class Mail**
**VIA Certified Mail (return receipt requested)**
Certified Number:

Lyndon Benjamin
Po Box 33
Milton, MA 02186

Property Address: 10 Lothrop Ave,
Milton, MA 02186

## AVISO IMPORTANTE PARA LAS PERSONAS QUE HABLAN ESPANOL:

Esta notificacion es de suma importancia, pues afecta su derecho a continuar viviendo en su casa. Si no entiende el contenido de esta carta, obtenga una traduccion immediatamente.

Dear Lyndon Benjamin

We have not received your mortgage payments for the months of 05/01/06 through 10/01/14. This means your account is now in default, and if you do not make these payments or reach another resolution with us, we may soon refer your loan to foreclosure, to commence the foreclosure process as required by your state law.

If you have already mailed these payments, please accept our thanks. Also, if you are already working with Ocwen Loan Servicing, LLC ("Ocwen") to avoid foreclosure, this letter does not apply to you. However, you may find some of the information on available programs listed below to be useful.

If you are already working with the Loss Mitigation department on a special forbearance or other foreclosure prevention alternative, this letter does not apply to you.

However, you may want to take advantage of the Homeownership Counseling information contained within this letter.

We are here to help. If you are experiencing financial difficulties, please contact us immediately 1-800-746-2936, Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET, and Sunday, 9:00 am to 9:00 pm ET.

If you need help, the following options may be available:

- <u>Refinance your loan:</u> You may choose to apply for a new mortgage and pay off your existing loan, if you can obtain favorable terms that would make your current payment more affordable.

- <u>Modify your loan terms with us:</u> We may be able to modify your loan. You may be eligible for a loan modification under the Home Affordable Modification Program (HAMP) or another available modification program, subject to program requirements. Contact us to receive application materials for any of our available loan modification programs.

NMLS # 1852                                                                                              OPTCRM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

- <u>Forbearance or Repayment Plan:</u> Payment forbearance temporarily gives you more time to pay your monthly payments. A forbearance may provide for temporary reduction or suspension of payments, or the ability to make regular monthly payments without contributing toward past due amounts for a period of time. If you have experienced a temporary loss of income or increase in expenses but can now afford to make higher payments, we may be able to develop a repayment plan.

- <u>Sale of the property:</u> If you are not able to continue paying your mortgage, your best option may be to find more affordable housing. As an alternative to foreclosure, you may be able to sell your home and use the proceeds to pay off your current loan.

- <u>Short Sale:</u> If the value of your home has declined, and you cannot sell the property for an amount sufficient to pay your current loan in full, you may be able to sell it for less than the full payoff amount to satisfy your debt.

- <u>Deed in Lieu of Foreclosure:</u> If you have tried to sell your property for 90 days, you may be able to voluntarily return the deed to Ocwen to satisfy your debt and avoid foreclosure.

To be considered for any of these options, you may be required to provide us with financial information. Collection activity will continue and your monthly mortgage payment will still be due while we evaluate your financial situation. Not all options may be available to you.

Call us today to learn more about your options and instructions for how to apply. The longer you wait, or the further you fall behind on your payments, the harder it will be to find a solution. If you have any requests for additional information regarding your loan, you may reach us by telephone at 1-800-746-2936. Our dedicated team of Loan Resolution Specialists is here to assist you.

If you have any further questions regarding this letter, your account or options that we may have available, please contact your designated Home Retention Specialist, Marilinda Ponce De Leon, You may schedule an appointment by calling 1-800-746-2936. Marilinda Ponce De Leon is your designated contact for inquiries and the submission of documents as needed.

If you would like to submit a qualified written request, a notice of error, or a request for information, you must use the following address:

Ocwen Loan Servicing, LLC, Research Department, P.O. Box 24736, West Palm Beach, Florida 33416-4736.

For more information, you may also visit our website at www.ocwen.com.

We have enclosed the pamphlet "How to Avoid Foreclosure," which describes methods to assist you in bringing your mortgage current. If you are unable to bring your mortgage current, the pamphlet also addresses other alternatives to foreclosure. Foreclosure is the legal means we may use to take ownership of your home if you do not make your mortgage payments.

For help exploring your options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/mortgagehelp/, the Department of Housing and Urban Development at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling 1-800-569-4287. The Toll Free TDD number for the HUD Counseling Agency is 1-800-877-8339. You may access a list of counseling agencies in the state of Washington at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=WA.

Sincerely,
Ocwen Loan Servicing, LLC

NMLS # 1852                                                                                                                              OPTCRM
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



### Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!*™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

<u>Please Note:</u>

This is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt. Any action taken by us is for the sole purpose of protecting our lien interest in your property and is not to recover any amounts from you personally. If you have surrendered your property during your bankruptcy case, please disregard this notice.

If you are currently in bankruptcy under Chapter 13, you should continue to make payments in accordance with your Chapter 13 Plan and disregard this notice.

NMLS # 1852                                                                                                    OPTCRM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

| | | |
|---|---|---|
| Servicemembers Civil<br>Relief Act<br>Notice Disclosure | U.S. Department of Housing<br>and Urban Development<br>Office of Housing | OMB Approval 2502-0584<br>Exp. 11/30/2014 |

### Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

### Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).

- Reserve and National Guard personnel who have been activated and are on Federal active duty.

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

### What Legal Protections Are Servicemembers Entitled to Under SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service, and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

### How Does a Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemenber's military orders

Ocwen Loan Servicing, LLC
Research Department
P.O. Box 24736
West Palm Beach, FL 33416-2436
1-800-746-2936

---

NMLS # 1852                                                                                                                    OPTCRM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

### How does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

"Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form HUD-92070
(02/2013)

NMLS # 1852                                                                                                    OPTCRM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

# EXHIBIT 2-F

Bk 34020 Pg146 #35221
04-21-2016 @ 10:18a

WILLIAM P. O'DONNELL, REGISTER
NORFOLK COUNTY REGISTRY OF DEEDS
RECEIVED & RECORDED ELECTRONICALLY

## AFFIDAVIT REGARDING COMPLIANCE WITH
## MGL c. 244 sec. 35B

**Property Address:** 10 Lothrop Avenue, Milton, MA 02186

**Mortgage:** Lyndon Benjamin to Mortgage Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan, dated September 23, 2005 recorded at Norfolk County Registry of Deeds in Book 22934, Page 27.
Assignment from Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Fremont Investment & Loan to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E dated September 9, 2014 recorded at Norfolk County Registry of Deeds in Book 32560, Page 199.

**Foreclosing Mortgagee:** HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E

The undersigned, _____ **Marjorie Timmerman** _____, having personal knowledge of the facts herein stated, under oath deposes and says as follows:

1. I am: [Check One]
   [ ] An officer or employee of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E, where I hold the office of _____.
   [X] An officer or employee of a duly authorized agent of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E.

2. In my capacity as _____ **Contract Management Coordinator** _____ (title), I am familiar with the business records of OCWEN LOAN SERVICING, LLC as they relate to servicing of the Mortgage Loan which is the subject of this affidavit. OCWEN LOAN SERVICING, LLC's records are reliable because they are kept in the ordinary course of business by persons who have a business duty to make such records. The records are made at or near the occurrence of events so recorded. To the extent records related to the

*Property Address: 10 Lothrop Avenue, Milton, MA 02186*

Lyndon Benjamin
13-010751 / FC03

loan come from another entity, those records were received by OCWEN LOAN SERVICING, LLC in the ordinary course of its servicing business, have been incorporated into and maintained as part of OCWEN LOAN SERVICING, LLC's business records, and have been relied on by OCWEN LOAN SERVICING, LLC. It is the regular practice of OCWEN LOAN SERVICING, LLC in its mortgage servicing business to make and maintain these records. I have personal knowledge of the facts set forth in this affidavit based upon my review of OCWEN LOAN SERVICING, LLC's business records maintained in connection with the Mortgage and the related Mortgage loan account whose repayment the Mortgage secures.

3. Based upon my review of the business records of OCWEN LOAN SERVICING, LLC, I certify that:
   [X] The requirements of M.G.L. c 244 sec. 35B have been complied with.
   [ ]G.L. C244 Section 35B is not applicable to the above mortgage.

Signed under the pains and penalties of perjury this ____17____ day of ___Sept.___, 2015.

**For authority see Power of Attorney recorded in Suffolk County Registry of Deeds in Book 51252, Page 341.

<div style="margin-left:40%">

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E
By: Ocwen Loan Servicing, LLC
Its: Attorney in Fact

By: _____
Title:    Marjorie Timmerman
          Contract Management Coordinator

</div>

**STATE OF FLORIDA**                )
                                    )
**COUNTY OF PALM BEACH**            )

The foregoing instrument was acknowledged and sworn before me this ___17___ day of _September_ 2015 by ___Marjorie Timmerman___ as a _Contract Management Coordinator_ of Ocwen Loan Servicing, LLC, who is personally known to me or who has produced _____ as identification.

Notary Public State of Florida
Holly Christian
My Commission FF 180349
Expires 12/02/2018

_____      Holly Christian
Notary Public – State of Florida
My Commission Expires: 12/2/18

# EXHIBIT 2-G

Bk 34020 Pg148 #35222
04-21-2016 @ 10:18a

WILLIAM P. O'DONNELL, REGISTER
NORFOLK COUNTY REGISTRY OF DEEDS
RECEIVED & RECORDED ELECTRONICALLY

**AFFIDAVIT REGARDING NOTE SECURED
BY MORTGAGE TO BE FORECLOSED
MGL c. 244 sec. 35C**

**Property Address:** 10 Lothrop Avenue, Milton, MA 02186

**Mortgage:** Lyndon Benjamin to Mortgage Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan, dated September 23, 2005 recorded at Norfolk County Registry of Deeds in Book 22934, Page 27.
Assignment from Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Fremont Investment & Loan to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E dated September 9, 2014 recorded at Norfolk County Registry of Deeds in Book 32560, Page 199.

**Foreclosing Mortgagee:** HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E

The undersigned, _____Marjorie Timmerman_____, having personal knowledge of the facts herein stated, under oath deposes and says as follows:

1. I am: [Check One]
   [ ] An officer or employee of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E, where I hold the office of _____.
   [X] An officer or employee of a duly authorized agent of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E.

2. In my capacity as _____Contract Management Coordinator_____ (title), I am familiar with the business records of OCWEN LOAN SERVICING, LLC as they relate to servicing of the Mortgage Loan which is the subject of this affidavit.  OCWEN LOAN SERVICING, LLC's records are reliable because they are kept in the ordinary course of business by persons who have a business duty to make such records. The records are made at or near the occurrence of events so recorded.  To the extent records related to the loan come from another entity, those records were received by OCWEN LOAN SERVICING, LLC in the ordinary course of its servicing business, have been incorporated into and maintained as part of OCWEN LOAN SERVICING, LLC's

*Property Address: 10 Lothrop Avenue, Milton, MA 02186*

Lyndon Benjamin
13-010751 / FC03

business records, and have been relied on by OCWEN LOAN SERVICING, LLC. It is the regular practice of OCWEN LOAN SERVICING, LLC in its mortgage servicing business to make and maintain these records. I have personal knowledge of the facts set forth in this affidavit based upon my review of OCWEN LOAN SERVICING, LLC's business records maintained in connection with the Mortgage and the related Mortgage loan account whose repayment the Mortgage secures.

3. Based upon my review of the business records of OCWEN LOAN SERVICING, LLC, I certify that HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E is:

[X] the holder of the promissory note secured by the above mortgage.

[ ] authorized by the owner of the promissory note secured by the above mortgage to conduct the foreclosure sale

Signed under the pains and penalties of perjury this ___17___ day of ___Sept.___, 2015.

**For authority see Power of Attorney recorded in Suffolk County Registry of Deeds in Book 51252, Page 341.

<div style="margin-left:40%">

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E
By: Ocwen Loan Servicing, LLC
Its: Attorney in Fact


By: _____
Title:        Marjorie Timmerman
              Contract Management Coordinator

</div>

**STATE OF FLORIDA**                                    )
                                                                        )
**COUNTY OF PALM BEACH**                       )

The foregoing instrument was acknowledged and sworn before me this ___17___ day of ___September___ 2015 by ___Marjorie Timmerman___ as a ___Contract Management Coordinator___ of Ocwen Loan Servicing, LLC, who is personally known to me or who has produced _____ as identification.

Notary Public State of Florida
Holly Christian
My Commission FF 180349
Expires 12/02/2018

Holly Christian

_____
Notary Public - State of Florida
My Commission Expires: 12/2/18

Lyndon Benjamin
13-010751 / FC03

# EXHIBIT 2-H

Bk 34756 P284 #129847
12-13-2016 @ 11:24a

**AFFIDAVIT REGARDING NOTE SECURED
BY MORTGAGE BEING FORECLOSED**

**Property Address:** 10 Lothrop Avenue, Milton, MA 02186

**Mortgage:** Lyndon Benjamin to Mortgage Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan, dated September 23, 2005 recorded in Norfolk County Registry of Deeds in Book 22934, Page 27.

**Assigned To:** HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E by assignment as follows:  assignment from Mortgage Electronic Registration Systems, Inc. (MERS) solely as nominee for Fremont Investment & Loan its successors and/or assigns to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E dated September 9, 2014 recorded at Norfolk County Registry of Deeds in Book 32560, Page 199.

**Foreclosing Mortgagee:** HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E

The undersigned, _____Jose Manrique_____, having personal knowledge of the facts herein stated, under oath deposes and says as follows:

1. I am: [Check One]
   [ ] An officer or employee of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E, where I hold the office of
   _____
   [X] An officer or employee of a duly authorized agent of HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-E, MORTGAGE-BACKED CERTIFICATES, SERIES 2005-E.

2. In my capacity as ___Contract Management Coordinator_____ (title), I am familiar with the business records of Ocwen Loan Servicing, LLC as they relate to the servicing of the Mortgage Loan which is the subject of this affidavit. Ocwen Loan Servicing, LLC's records are reliable because they are kept in the ordinary course of business by persons who have a business duty to make such records. The records are made at or near the occurrence of events so recorded. To the extent records related to the loan come from another entity, those records were received by Ocwen Loan Servicing, LLC in the ordinary course of its servicing business, have been incorporated into and maintained as part of Ocwen Loan Servicing, LLC's business records, and have been relied on by Ocwen Loan Servicing, LLC. It is the regular practice of Ocwen Loan Servicing, LLC in its mortgage servicing business to make and maintain these records. I have personal knowledge of the facts set forth in this affidavit based upon my review of Ocwen Loan Servicing, LLC's business records maintained in connection with the Mortgage and the related Mortgage loan account whose repayment the Mortgage secures

Property Address:  10 Lothrop Avenue, Milton, MA 02186

WILLIAM P. O'DONNELL, REGISTER
NORFOLK COUNTY REGISTRY OF DEEDS
RECEIVED & RECORDED ELECTRONICALLY

Bk 34756 Pg285 #129847

3. Based upon my review of the business records of OCWEN LOAN SERVICING, LLC, I certify that:

    a.   as of the dates when the Notices of Sale relating to the mortgage at issue were mailed and published pursuant to M.G.L. Chapter 244, Section 14 up to and including the Foreclosure Sale Date, the Foreclosing Mortgagee was: [Check One]

      [X] the holder of the promissory note secured by the above mortgage.

      [ ] authorized by the owner of the promissory note secured by the above mortgage to conduct the foreclosure sale.

    b.   [Check One]

      [X] the contractual notice of default was sent to the mortgagor(s) on or before July 17, 2015.

      [ ] the contractual notice of default was sent to the mortgagor(s) after July 17, 2015, and strictly complies with the notice provision set forth in the terms of the subject mortgage.

      [ ] Notice of default is not required pursuant to the terms of the subject mortgage.

Signed under the pains and penalties of perjury this __30__ day of __NOV__, 2016.

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E
By: Ocwen Loan Servicing, LLC
Its: Attorney in Fact

By: _____

Title: Jose Manrique
      Contract Management Coordinator

For authority see Power of Attorney recorded in Suffolk County Registry of Deeds in Book 51252, Page 341.

STATE OF FLORIDA
COUNTY OF __PALM BEACH__

Sworn to (or affirmed) and subscribed before me this __30__ day of __November__,

2016 (year), by __Jose Manrique__ (name of person making statement).

_____
(Signature of Notary Public)
Notary Public - State of Florida

Karen P. Peterkin

    (seal)    (Printed, Typed, or Stamped Name of Notary Public)

Notary Public State of Florida
Karen P Peterkin
My Commission FF 116782
Expires 03/25/2018

Personally Known
Produced Identification    Type of Identification Produced: _____

# EXHIBIT 2-I



# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

July ___/___, 2016

Lyndon Benjamin
31 Hilltop Lane
South Easton, MA 02375



VIA
CERT

Please reference our File #: 13-010751/ Benjamin

RE:     HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-
        E, Mortgage-Backed Certificates, Series 2005-E vs. Lyndon Benjamin
        Land Court Case No.  15 SM 005273
        Property Address:  10 Lothrop Avenue, Milton, MA 02186

Dear Sir/Madam:

You are hereby notified of the intention of HSBC Bank USA, National Association, as Trustee for
Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E to foreclose by sale
under the power of sale contained in a certain mortgage given by Lyndon Benjamin to Mortgage
Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan.
Enclosed you will find a copy of the Mortgagee's Sale of Real Estate that is being published in the
Milton Record Transcript.  The sale is scheduled for August 3, 2016 at 1:00PM on the premises.

The notice is provided to you because an examination of the record title shows you held an interest of
record in the property thirty (30) days prior to the sale. Also enclosed is a copy of the Certification of
Right to Foreclose pursuant to 209 C.M.R. 18.21A(2)(c)

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.

**If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have
been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an
attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you
personally.**

Very truly yours,

Paul Lambert
PL/jb

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY



# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

July ___, 2016

Lyndon Benjamin
71 Messenger Street
Apt. 1024
Plainville, MA 02762



Certified Article Number
V  9414 7266 9904 2072 0231 97
C
SENDERS RECORD

Please reference our File #:  13-010751/ Benjamin

RE:     HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-
        E, Mortgage-Backed Certificates, Series 2005-E vs. Lyndon Benjamin
        Land Court Case No.  15 SM 005273
        Property Address:  10 Lothrop Avenue, Milton, MA 02186

Dear Sir/Madam:

You are hereby notified of the intention of HSBC Bank USA, National Association, as Trustee for
Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E to foreclose by sale
under the power of sale contained in a certain mortgage given by Lyndon Benjamin to Mortgage
Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan.
Enclosed you will find a copy of the Mortgagee's Sale of Real Estate that is being published in the
Milton Record Transcript.  The sale is scheduled for August 3, 2016 at 1:00PM on the premises.

The notice is provided to you because an examination of the record title shows you held an interest of
record in the property thirty (30) days prior to the sale. Also enclosed is a copy of the Certification of
Right to Foreclose pursuant to 209 C.M.R. 18.21A(2)(c)

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.

**If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have
been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an
attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you
personally.**

Very truly yours,

Paul Lambert
PL/jb

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS  01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY



# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

July ___, 2016



Certified Article Number

9414 7266 9904 2072 0231 80

SENDERS RECORD

Lyndon Benjamin
P.O. Box 33
Milton, MA 02186

Please reference our File #: 13-010751/ Benjamin

RE:      HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-
E, Mortgage-Backed Certificates, Series 2005-E vs. Lyndon Benjamin
Land Court Case No. 15 SM 005273
Property Address: 10 Lothrop Avenue, Milton, MA 02186

Dear Sir/Madam:

You are hereby notified of the intention of HSBC Bank USA, National Association, as Trustee for
Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E to foreclose by sale
under the power of sale contained in a certain mortgage given by Lyndon Benjamin to Mortgage
Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan.
Enclosed you will find a copy of the Mortgagee's Sale of Real Estate that is being published in the
Milton Record Transcript. The sale is scheduled for August 3, 2016 at 1:00PM on the premises.

The notice is provided to you because an examination of the record title shows you held an interest of
record in the property thirty (30) days prior to the sale. Also enclosed is a copy of the Certification of
Right to Foreclose pursuant to 209 C.M.R. 18.21A(2)(c)

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.

**If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have
been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an
attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you
personally.**

Very truly yours,

Paul Lambert
PL/jb

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY



# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

July 1, 2016



Certified Article Number

9414 7266 9904 2072 0231 73

SENDERS RECORD

Lyndon Benjamin
10 Lothrop Avenue
Milton, MA 02186

Please reference our File #:  13-010751/ Benjamin

RE:     HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-
        E, Mortgage-Backed Certificates, Series 2005-E vs. Lyndon Benjamin
        Land Court Case No.  15 SM 005273
        Property Address:  10 Lothrop Avenue, Milton, MA 02186

Dear Sir/Madam:

You are hereby notified of the intention of HSBC Bank USA, National Association, as Trustee for
Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E to foreclose by sale
under the power of sale contained in a certain mortgage given by Lyndon Benjamin to Mortgage
Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan.
Enclosed you will find a copy of the Mortgagee's Sale of Real Estate that is being published in the
Milton Record Transcript.  The sale is scheduled for August 3, 2016 at 1:00PM on the premises.

The notice is provided to you because an examination of the record title shows you held an interest of
record in the property thirty (30) days prior to the sale. Also enclosed is a copy of the Certification of
Right to Foreclose pursuant to 209 C.M.R. 18.21A(2)(c)

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.

**If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have
been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an
attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you
personally.**

Very truly yours,

Paul Lambert
PL/jb

**WALZ CERTIFIED MAILER®**

FROM **WALZ**

FORM #35663 VERSION: B03/16
U.S. PAT. NO. 5,501,383

9414 7266 9904 2072 0231 73

**Label #1**

Lyndon Benjamin
10 Lothrop Avenue
Milton, MA 02186

13-010751 FC03-MA

**TO:**

Lyndon Benjamin
10 Lothrop Avenue
Milton, MA 02186

**Label #2**

**SENDER:** Korde & Associates, P.C.

**REFERENCE:** Benjamin, Lyndon/BFB/13-010751 FC03-MA

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.885 |
|---|---|---|
| | Certified Fee | 3.30 |
| | Return Receipt Fee | 2.70 |
| | Restricted Delivery | |
| | Total Postage & Fees | 6.885 |

**Label #3**

Lyndon Benjamin
10 Lothrop Avenue
Milton, MA 02186

13-010751 FC03-MA

**USPS®**
**Receipt for Certified Mail®**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

A   FOLD AND TEAR THIS WAY ——➤ OPTIONAL

**Label #5**

Lyndon Benjamin
10 Lothrop Avenue
Milton, MA 02186

13-010751 FC03-MA

**Label #6**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9414 7266 9904 2072 0231 73

**Charge Amount:**

**Charge To:**

FOLD AND TEAR THIS WAY ——➤

Thank you for using Return Receipt Service

RETURN RECEIPT REQUESTED
USPS® MAIL CARRIER
DETACH ALONG PERFORATION

**2. Article Number**

9414 7266 9904 2072 0231 73

**3. Service Type   CERTIFIED MAIL®**

**4. Restricted Delivery? (Extra Fee)**   ☐ Yes

**1. Article Addressed to:**

Lyndon Benjamin
10 Lothrop Avenue
Milton, MA 02186

Benjamin, Lyndon/BFB/13-010751 FC03-MA

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X   ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

Thank you for using Return Receipt Service

PS Form 3811, January 2005         Domestic Return Receipt

**WALZ CERTIFIED MAILER®**

FROM **WALZ**

FORM #50008 VERSION: DO310
U.S. PAT. NO. 5,501,393

9414 7266 9904 2072 0231 80

Label #1

Lyndon Benjamin
P.O. Box 33
Milton, MA 02186

13-010751 FC03-MA

**TO:**

Lyndon Benjamin
P.O. Box 33
Milton, MA 02186

**SENDER:** Korde & Associates, P.C.

**REFERENCE:** Benjamin, Lyndon/BFB/13-010751 FC03-MA

Label #2

Label #3

Lyndon Benjamin
P.O. Box 33
Milton, MA 02186

13-010751 FC03-MA

— TEAR ALONG THIS LINE →

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | | |
|---|---|---|
| | Postage | 0.885 |
| | Certified Fee | 3.30 |
| | Return Receipt Fee | 2.70 |
| | Restricted Delivery | |
| | Total Postage & Fees | 6.885 |

POSTMARK OR DATE

**USPS®**
**Receipt for Certified Mail®**

No Insurance Coverage Provided
Do Not Use for International Mail

**A**  FOLD AND TEAR THIS WAY ──→ OPTIONAL

**B**

Label #5

Lyndon Benjamin
P.O. Box 33
Milton, MA 02186

13-010751 FC03-MA

Label #6

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF RETURN ADDRESS  FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9414 7266 9904 2072 0231 80

Charge Amount:

Charge To:

Label #4

FOLD AND TEAR THIS WAY ──→

Thank you for using Return Receipt Service

RETURN RECEIPT REQUESTED
USPS® MAIL CARRIER
DETACH ALONG PERFORATION

2. Article Number

9414 7266 9904 2072 0231 80

3. Service Type   **CERTIFIED MAIL®**

4. Restricted Delivery? *(Extra Fee)*  ☐ Yes

1. Article Addressed to:

Lyndon Benjamin
P.O. Box 33
Milton, MA 02186

Benjamin, Lyndon/BFB/13-010751 FC03-MA

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature

X _____    ☐ Agent
                              ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

PS Form 3811, January 2005    Domestic Return Receipt

Thank you for using Return Receipt Service

**WALZ CERTIFIED MAILER®**

FROM **WALZ**

FORM #35000 VERSION: D03/10
U.S. PAT. NO. 5,501,393

9414 7266 9904 2072 0231 97

**TO:**

Lyndon Benjamin
71 Messenger Street
Apt. 1024
Plainville, MA 02762

**Label #1**

Lyndon Benjamin
71 Messenger Street
Apt. 1024
Plainville, MA 02762

13-010751 FC03-MA

**SENDER:** Korde & Associates, P.C.

**REFERENCE** Benjamin, Lyndon/BFB/13-
010751 FC03-MA

**Label #2**

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | | |
|---|---|---|
| | Postage | 0.885 |
| | Certified Fee | 3.30 |
| | Return Receipt Fee | 2.70 |
| | Restricted Delivery | |
| | Total Postage & Fees | 6.885 |

POSTMARK OR DATE

**Label #3**

Lyndon Benjamin
71 Messenger Street
Apt. 1024
Plainville, MA 02762

13-010751 FC03-MA

**USPS®**
**Receipt for Certified Mail®**

No Insurance Coverage Provided
Do Not Use for International Mail

→ TEAR ALONG THIS LINE

A   FOLD AND TEAR THIS WAY ⟶ OPTIONAL

B   **Label #5**

Lyndon Benjamin
71 Messenger Street
Apt. 1024
Plainville, MA 02762

13-010751 FC03-MA

**Label #6**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9414 7266 9904 2072 0231 97

Charge Amount:

Charge To:

Label #4

FOLD AND TEAR THIS WAY ⟶

Thank you for using Return Receipt Service

**RETURN RECEIPT REQUESTED**
**USPS® MAIL CARRIER**
**DETACH ALONG PERFORATION**

2. Article Number

9414 7266 9904 2072 0231 97

3. Service Type   **CERTIFIED MAIL®**

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

1. Article Addressed to:

Lyndon Benjamin
71 Messenger Street
Apt. 1024
Plainville, MA 02762

Benjamin, Lyndon/BFB/13-010751 FC03-MA

**COMPLETE THIS SECTION ON DELIVERY**

| A. Received by (Please Print Clearly) | B. Date of Delivery |
|---|---|

C. Signature

X _____   ☐ Agent   ☐ Addressee

D. Is delivery address different from Item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

PS Form 3811, January 2005   Domestic Return Receipt

Thank you for using Return Receipt Service

WALZ CERTIFIED MAILER®

FROM **WALZ**

U.S. PAT. NO. 5,501,393

9414 7266 9904 2072 0232 03

**TO:**
Lyndon Benjamin
31 Hilltop Lane
South Easton, MA 02375

Label #1
Lyndon Benjamin
31 Hilltop Lane
South Easton, MA 02375

13-010751 FC03-MA

**SENDER:** Korde & Associates, P.C.

**REFERENCE** Benjamin, Lyndon/BFB/13-010751 FC03-MA

Label #2

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.885 |
|---|---|---|
| | Certified Fee | 3.30 |
| | Return Receipt Fee | 2.70 |
| | Restricted Delivery | |
| | Total Postage & Fees | 6.885 |

Label #3
Lyndon Benjamin
31 Hilltop Lane
South Easton, MA 02375

13-010751 FC03-MA

**USPS®**
**Receipt for Certified Mail®**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

A   FOLD AND TEAR THIS WAY ⟶ OPTIONAL

B

Label #5
Lyndon Benjamin
31 Hilltop Lane
South Easton, MA 02375

13-010751 FC03-MA

Label #6
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF RETURN ADDRESS; FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9414 7266 9904 2072 0232 03

Charge Amount:

Charge To:

Label #4

FOLD AND TEAR THIS WAY ⟶

Thank you for using Return Receipt Service

RETURN RECEIPT REQUESTED
USPS® MAIL CARRIER
DETACH ALONG PERFORATION

2. Article Number

9414 7266 9904 2072 0232 03

3. Service Type   **CERTIFIED MAIL®**

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

1. Article Addressed to:

Lyndon Benjamin
31 Hilltop Lane
South Easton, MA 02375

Benjamin, Lyndon/BFB/13-010751 FC03-MA

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

PS Form 3811, January 2005   Domestic Return Receipt

Thank you for using Return Receipt Service

# EXHIBIT 2-J

Bk 34756 Pg281 #129846

### *AFFIDAVIT OF SALE UNDER POWER OF SALE IN MORTGAGE*

I, ___Carlene Reid___ ✱ ___, of Ocwen Loan Servicing, LLC, as Attorney in Fact for HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E, make oath and say that the principal and interest obligations mentioned in the mortgage above referred to were not paid or tendered or performed when due or prior to the sale, and that HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E, caused to be published on August 25, 2016, September 1, 2016, and September 8, 2016, in the Milton Times, a newspaper published or by its title page purporting to be published in Milton, Massachusetts and having a circulation therein, a notice of which the following is a true copy.

(See Exhibit A attached hereto)

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E also complied with Chapter 244, Section 14 of the Massachusetts General Laws, as amended, by causing to be mailed the required notices, certified mail, return receipt requested.

I state that the requirements of the power of sale included in the mortgage and of the law have been complied with in all respects.

Pursuant to said notice at the time and place therein appointed September 23, 2016, at 4:00 PM, upon the mortgaged premises, at which time and place, the sale was postponed by public proclamation to November 8, 2016, at 10:00 AM, upon the mortgaged premises at which time and place upon the mortgaged premises the sale was postponed by public proclamation to November 17, 2016, at 2:00 PM, upon the mortgaged premises at which time and place upon the mortgaged premises, HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E sold the mortgaged premises at public auction by Charles F. Cawley of BayState Auction Co., Inc., a duly licensed auctioneer, to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E, c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409, above named, for Four Hundred Twenty-Eight Thousand Dollars and 00/100 ($428,000.00)

Property Address:  10 Lothrop Avenue, Milton, MA 02186
13-010731 / FC03

Bk 34756 Pg282 #129846

bid by HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E, c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409, being the highest bid made therefore at said auction.

Signed under the pains and penalties of perjury this _____30_____ day of _____Nov._____, 2016.

<div style="margin-left:40%">

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E
By: Ocwen Loan Servicing, LLC
Its:  Attorney in Fact

_Carlene Reid_    11-30-16

By:    **Carlene Reid**
Title:   Contract Management Coordinator  ✶

</div>

For authority see Power of Attorney recorded in Suffolk County Registry of Deeds in Book 51252, Page 341.

STATE OF FLORIDA
COUNTY OF _Palm Beach_

Sworn to (or affirmed) and subscribed before me this _____30_____ day of _____Nov_____, 2016, by
~~Carlene Reid~~  ✶_____ (name of person making statement).



Notary Public   **Mei-Ling Mitchell**
My commission expires: _____

Personally Known To Me
Mm 11-30-16

Notary Public State of Florida
Mei-Ling Mitchell
My Commission FF 073851
Expires 12/02/2017

Property Address:  10 Lothrop Avenue, Milton, MA 02186
1340\07517/FC03

Bk 34756 Pg283 #129846

# Exhibit A

**LEGAL NOTICE**
**MORTGAGEE'S SALE OF REAL ESTATE**

By virtue of and in execution of the Power of Sale contained in a certain mortgage given by Lyndon Benjamin to Mortgage Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan, dated September 23, 2005 and recorded in Norfolk County Registry of Deeds in Book 22934, Page 27 of which mortgage HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E is the present holder by assignment from Mortgage Electronic Registration Systems, Inc. solely as nominee for Fremont Investment & Loan to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E dated September 9, 2014 recorded at Norfolk County Registry of Deeds in Book 32560, Page 199, for breach of conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises located at 10 Lothrop Avenue, Milton, MA 02186 will be sold at a Public Auction at 4:00PM on September 23, 2016, at the mortgaged premises, more particularly described below, all and singular the premises described in said mortgage, to wit:

The land, together with the buildings thereon, situated in Milton, Massachusetts being shown as Lot 11 on plan by G.L. Richardson, dated May 4, 1889, recorded with Norfolk Deeds, Book 623, Page 263, bounded and described as follows:

SOUTHEASTERLY by Lot 12 on said plan, 86.5 feet;
SOUTHWESTERLY by Lothrop Avenue, 50 feet;
NORTHWESTERLY by Lot 10 on said plan, 87.5 feet; and
NORTHEASTERLY by land now or formerly of Churchill, 50 feet.
Containing 4,350 feet of land.

For mortgagor's title see deed recorded with the Norfolk County Registry of Deeds in Book 22934, Page 25.

The premises will be sold subject to a one-year redemption right in favor of the United States of America by virtue of the Notice of Lien for Fine and/or Restitution Imposed Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 recorded at Suffolk County Registry of Deeds in Book 25128, Page 520.

The premises will be sold subject to any and all unpaid taxes and other municipal assessments and liens, and subject to prior liens or other enforceable encumbrances of record entitled to precedence over this mortgage, and subject to and with the benefit of all easements, restrictions, reservations and conditions of record and subject to all tenancies and/or rights of parties in possession.

Terms of the Sale: Cash, cashier's or certified check in the sum of $5,000.00 as a deposit must be shown at the time and place of the sale in order to qualify as a bidder (the mortgage holder and its designee(s) are exempt from this requirement); high bidder to sign written Memorandum of Sale upon acceptance of bid; balance of purchase price payable in cash or by certified check in thirty (30) days from the date of the sale at the offices of mortgagee's attorney, Korde & Associates, P.C., 900 Chelmsford Street, Suite 3102, Lowell, MA 01851 or such other time as may be designated by mortgagee. The description for the premises contained in said mortgage shall control in the event of a typographical error in this publication.

Other terms to be announced at the sale.

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E
Korde & Associates, P.C.
900 Chelmsford Street
Suite 3102
Lowell, MA 01851
(978) 256-1900
Benjamin, Lyndon, 13-010751, August 25, 2016, September 1, 2016, September 8, 2016

MT - 8/25, 9/1, 9/8

# EXHIBIT 2-K

Bk 34756 P280 #129846
12-13-2016 @ 11:24a

*FORECLOSURE DEED*

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E,
Mortgage-Backed Certificates, Series 2005-E, having a place of business c/o Ocwen Loan Servicing,
LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409, the present holder of a
mortgage from Lyndon Benjamin to Mortgage Electronic Registration Systems, Inc. acting solely as a
nominee for Fremont Investment & Loan, dated September 23, 2005, and recorded in Norfolk County
Registry of Deeds in Book 22934, Page 27*, by the power conferred by said mortgage and every other
power, for Four Hundred Twenty-Eight Thousand Dollars and 00/100 ($428,000.00) paid, grants to
HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E,
Mortgage-Backed Certificates, Series 2005-E, c/o Ocwen Loan Servicing, LLC, 1661 Worthington
Road, Suite 100, West Palm Beach, Florida 33409, the premises conveyed by said mortgage.

*See Assignment Recorded at Norfolk County Registry of Deeds in Book 32560, Page 199.

*Witness* the execution of said corporation on ___November    30,  2016___

<div style="margin-left:3em">

HSBC Bank USA, National Association, as Trustee for
Fremont Home Loan Trust 2005-E, Mortgage-Backed
Certificates, Series 2005-E
By: Ocwen Loan Servicing, LLC
Its: Attorney in Fact

By: _____Carlene Reid_____ 11-30-16
Title:   Carlene Reid
         Contract Management Coordinator
</div>

For authority see Power of Attorney recorded in Suffolk County Registry of Deeds in Book 51252,
Page 341.


STATE OF FLORIDA
COUNTY OF _Palm Beach_

On this __30_ day of _November_ 2016, before me, the undersigned Notary Public, personally

appeared ___Carlene Reid   Contract Management Coordinator___, of Ocwen Loan Servicing LLC, as attorney
in fact for HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E,
Mortgage-Backed Certificates, Series 2005-E, who is either personally known to me, or proved to me
through satisfactory evidence of identification, to be the person who signed the preceding or attached
document, and acknowledged to me that he/she executed the same for its stated purpose and as the
free act and deed of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan
Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E.

<div style="margin-left:3em">

_____ Mei-Ling Mitchell
Notary Public
My commission expires:

Notary Public State of Florida
Mei-Ling Mitchell
My Commission FF 073851
Expires 12/02/2017
</div>

CHAPTER 183 SEC. 6 AS AMENDED BY CHAPTER 497 OF 1969

Every deed presented for record shall contain or have endorsed upon it, the full name, residence and post office address of the grantee and a recital of the amount of the full consideration thereof in dollars
or the nature of the other consideration therefor, if not delivered for a specific monetary sum.  The full consideration shall mean the total price for the conveyance without deduction for any liens or
encumbrances assumed by the grantee or remaining thereon.  All such endorsements and recitals shall be recorded as part of the deed.  Failure to comply with this section shall not affect the validity of any
deed.  No register of deeds shall accept a deed for recording unless it is in compliance with the requirements of this section.

Property Address:  10 Lothrop Avenue, Milton, MA 02186
13-010751 / PC03

MASSACHUSETTS STATE EXCISE TAX
Norfolk Registry of Deeds
Date: 12-13-2016 @ 11:24am
Ctl#: 720      Doc#: 129846
Fee: $1,951.68  Cons: $428,000.00

WILLIAM P. O'DONNELL, REGISTER
NORFOLK COUNTY REGISTRY OF DEEDS
RECEIVED & RECORDED ELECTRONICALLY

Property Address:  10 Lothrop Avenue, Milton, MA 02186

Bk 34756 P284 #129847
12-13-2016 @ 11:24a

**AFFIDAVIT REGARDING NOTE SECURED
BY MORTGAGE BEING FORECLOSED**

**Property Address:** 10 Lothrop Avenue, Milton, MA 02186

**Mortgage:** Lyndon Benjamin to Mortgage Electronic Registration Systems, Inc. acting solely as a nominee for Fremont Investment & Loan, dated September 23, 2005 recorded in Norfolk County Registry of Deeds in Book 22934, Page 27.

**Assigned To:** HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E by assignment as follows: assignment from Mortgage Electronic Registration Systems, Inc. (MERS) solely as nominee for Fremont Investment & Loan its successors and/or assigns to HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E dated September 9, 2014 recorded at Norfolk County Registry of Deeds in Book 32560, Page 199.

**Foreclosing Mortgagee:** HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E

The undersigned, _____Jose Manrique_____, having personal knowledge of the facts herein stated, under oath deposes and says as follows:

1. I am: [Check One]
   [ ] An officer or employee of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E, where I hold the office of _____

   [X] An officer or employee of a duly authorized agent of HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-E, MORTGAGE-BACKED CERTIFICATES, SERIES 2005-E.

2. In my capacity as ____Contract Management Coordinator_____ (title), I am familiar with the business records of Ocwen Loan Servicing, LLC as they relate to the servicing of the Mortgage Loan which is the subject of this affidavit. Ocwen Loan Servicing, LLC's records are reliable because they are kept in the ordinary course of business by persons who have a business duty to make such records. The records are made at or near the occurrence of events so recorded. To the extent records related to the loan come from another entity, those records were received by Ocwen Loan Servicing, LLC in the ordinary course of its servicing business, have been incorporated into and maintained as part of Ocwen Loan Servicing, LLC's business records, and have been relied on by Ocwen Loan Servicing, LLC. It is the regular practice of Ocwen Loan Servicing, LLC in its mortgage servicing business to make and maintain these records. I have personal knowledge of the facts set forth in this affidavit based upon my review of Ocwen Loan Servicing, LLC's business records maintained in connection with the Mortgage and the related Mortgage loan account whose repayment the Mortgage secures

WILLIAM P. O'DONNELL, REGISTER
NORFOLK COUNTY REGISTRY OF DEEDS
RECEIVED & RECORDED ELECTRONICALLY

Property Address: 10 Lothrop Avenue, Milton, MA 02186

Bk 34756 Pg285 #129847

3. Based upon my review of the business records of OCWEN LOAN SERVICING, LLC, I certify that:

a. as of the dates when the Notices of Sale relating to the mortgage at issue were mailed and published pursuant to M.G.L. Chapter 244, Section 14 up to and including the Foreclosure Sale Date, the Foreclosing Mortgagee was: [Check One]
[X] the holder of the promissory note secured by the above mortgage.
[ ] authorized by the owner of the promissory note secured by the above mortgage to conduct the foreclosure sale.

b. [Check One]
[X] the contractual notice of default was sent to the mortgagor(s) on or before July 17, 2015.
[ ] the contractual notice of default was sent to the mortgagor(s) after July 17, 2015, and strictly complies with the notice provision set forth in the terms of the subject mortgage.
[ ] Notice of default is not required pursuant to the terms of the subject mortgage.

Signed under the pains and penalties of perjury this ___30___ day of ___NOV___, 2016.

HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E
By: Ocwen Loan Servicing, LLC
Its: Attorney in Fact

By: _____
Title: Jose Manrique
       Contract Management Coordinator

For authority see Power of Attorney recorded in Suffolk County Registry of Deeds in Book 51252, Page 341.

STATE OF FLORIDA
COUNTY OF ___PALM BEACH___

Sworn to (or affirmed) and subscribed before me this ___30___ day of ___November___,

2016 (year), by ___Jose Manrique___ (name of person making statement).

Notary Public State of Florida
Karen P Peterkin
My Commission FF 118782
Expires 03/25/2018

_____
(Signature of Notary Public)
Notary Public - State of Florida

Karen P. Peterkin

(seal)                    (Printed, Typed, or Stamped Name of Notary Public)

✓ Personally Known
Produced Identification          Type of Identification Produced: _____