UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY LYDON BENJAMIN,
    Plaintiff,

    v.                                    CIVIL ACTION NO.
                                          17-11727-PBS

FREMONT INVESTMENT & LOAN;
LITTON LOAN SERVICING, LP; and
OCWEN LOAN SERVICING, LLC,
    Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 28);**
**PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 31)**

**January 7, 2020**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment filed by defendants Ocwen Loan Servicing, LLC ("Ocwen") and Litton Loan Servicing, LP ("Litton") (collectively "defendants") (Docket Entry # 28).  Plaintiff Anthony Lydon Benjamin ("plaintiff") opposes the motion.  (Docket Entry # 31).  After a hearing, this court took defendants' motion (Docket Entry # 28) under advisement.  Plaintiff's cross motion for summary judgment (Docket Entry # 31) is also ripe for review.

PROCEDURAL HISTORY

On February 1, 2017, plaintiff filed a pro se complaint in Massachusetts Superior Court (Norfolk County) alleging misconduct by Ocwen, Litton, and defendant Fremont Investment &

Loan ("Fremont") in connection with a mortgage loan plaintiff received in 2005.[1]  (Docket Entry # 10, pp. 4-5).  The complaint seeks $700,000 in damages and a rescission of a November 2016 foreclosure.  (Docket Entry # 29-1, p. 4).  It sets out the following claims: (1) a violation of Massachusetts General Laws chapter 93A, section nine ("chapter 93A");[2] (2) a violation of the Due Process Clause presumably under the Fourteenth Amendment;[3] (3) breach of contract based on a lack of notice and, in light of the alleged lack of notice, a request to rescind or void the November 2016 foreclosure.  (Docket Entry # 10, pp. 4-5).  Pursuant to 28 U.S.C. §§ 1332 and 1441(b), defendants removed the case to this court in September 2017.  (Docket Entry # 2).

---

[1]  To date, Fremont has not filed an appearance and it is unclear whether plaintiff successfully accomplished service on Fremont on or before a state-court September 11, 2017 deadline.  (Docket Entry # 2, p. 1, n.2) (Docket Entry # 2-3, p. 8) (Docket Entry # 10, pp. 1, 3).  Removal papers represent that Fremont "ceased operations on or before July 25, 2008 per the records of the Federal Deposit Insurance Corporation, but before ceasing operations was an industrial bank chartered" in California.  (Docket Entry # 2, p. 2) (Docket Entry # 2-5, p. 2).
[2]  The complaint does not cite a specific section of chapter 93A.  Because plaintiff filed the complaint when he did not have counsel, this court construes the pro se complaint as raising a section nine, consumer-based chapter 93A claim.
[3]  The complaint refers to the foreclosure as "without due process," which, drawing reasonable inferences, refers to the Due Process Clause of the Fourteenth Amendment.  (Docket Entry # 10, p. 4).

On August 6, 2018, this court issued a Report and
Recommendation recommending that defendants' motion to dismiss
(Docket Entry # 8) be allowed in part and denied in part.
(Docket Entry # 25).  The district judge adopted the Report and
Recommendation without objection on August 22, 2018.  (Docket
Entry # 26).  Accordingly, the chapter 93A claim was dismissed
without prejudice and the following claims remain: (1) breach of
contract based on lack of notice and a related request to
rescind or void the November 2016 foreclosure; and (2) violation
of the Due Process Clause of the Fourteenth Amendment.  (Docket
Entry # 25, pp. 13, 20-22, 29-30).

On May 28, 2019, defendants filed the summary judgment
motion on all remaining claims, i.e., the lack of notice claim
and the due process claim.  (Docket Entry # 28).  On June 17,
2019, plaintiff filed the opposition and the cross motion for
summary judgment.  (Docket Entry # 31).  The opposition and
cross motion address only the lack of notice claim regarding
paragraph 22 of the mortgage.  (Docket Entry # 31).  They do not
address the due process claim.  (Docket Entry # 31).  In late
June 2019, defendants filed a reply to the opposition and cross
motion.  (Docket Entry # 32).

<u>STANDARD OF REVIEW</u>

Summary judgment is designed "to 'pierce the boilerplate of
the pleadings and assay the parties' proof in order to determine

whether trial is actually required.'"  Tobin v. Fed. Express Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted).  It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side."  Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).

"An issue is 'genuine' when a rational factfinder could resolve it [in] either direction" and "[a] fact is 'material' when its (non)existence could change a case's outcome."  Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5 (1st Cir. 2018) (internal citations omitted); accord Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014).  The record is viewed in favor of the nonmoving party and reasonable inferences are drawn in that party's favor.  See Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017); Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014).  "'"Conclusory allegations, improbable inferences, and unsupported speculation"'" are ignored.  Garcia-Garcia, 878 F.3d at 417 (internal citations omitted).  Adhering to this framework, the facts are as follows.

## FACTUAL BACKGROUND

Prior to a November 2016 foreclosure, plaintiff owned property located at 10 Lothrop Avenue in Milton, Massachusetts ("the property"). (Docket Entry # 29-2, p. 6). On September 23, 2005, he executed a promissory note ("the note" or "the mortgage loan") for $340,800 to Fremont, the lender. (Docket Entry # 29-2, p. 6). On the same day, plaintiff executed a mortgage ("the mortgage") pledging the property as security for the note.[4] (Docket Entry # 29-2, p. 17). Under the terms of the adjustable rate rider ("the rider"), plaintiff promised to pay $2,201 in monthly payments "on the first day of every month, beginning on November 1, 2005." (Docket Entry # 29-2, p. 30). The mortgage initially carried a fixed interest rate and thereafter transitioned to an adjustable interest rate on October 1, 2007. (Docket Entry # 29-2, p. 12).

The mortgage specifies that the mortgage loan applies the borrower's payments as follows:

> [A]ll payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

---

[4] The mortgage and an attached rider are referred to as a "Security Instrument." (Docket Entry # 29-2, pp. 11-34).

5

(Docket Entry # 29-2, p. 18).  The mortgage identifies plaintiff as the borrower and the mortgagor, and Fremont as the lender. (Docket Entry # 29-2, pp. 15-16).  The first page of the mortgage names Mortgage Electronic Registration Systems, Inc. ("MERS") as a "separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (Docket Entry # 29-2, p. 15).  The mortgage also states that, "MERS is the mortgagee under this Security Instrument."  (Docket Entry # 29-2, p. 15) (bold font omitted).

Under the mortgage, MERS, as mortgagee, "holds only legal title to the interests granted by [plaintiff] in this Security Instrument."  (Docket Entry # 29-2, p. 17).  The mortgage gives MERS, as holder of legal title, the right to exercise the interests granted by plaintiff in the mortgage, including "the right to foreclose and sell the Property."  (Docket Entry # 29-2, p. 17).  The relevant language reads as follows:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(Docket Entry # 29-2, p. 17).  The mortgage also gives MERS, as mortgagee, the power of sale and the authority to assign the

mortgage.   (Docket Entry # 29-2, p. 17).   The relevant language

in the mortgage states that:

> Borrower does hereby mortgage, grant and convey to MERS
> (solely as nominee for Lender and Lender's successors and
> assigns) and to the successors and assigns of MERS, with
> power of sale, the following described property located in
> the County of Norfolk.

(Docket Entry # 29-2, p. 17) (capitalization and bold font

omitted).

In paragraph 22, the mortgage provides that if the lender

invokes the "statutory power of sale," the lender "shall mail a

copy of a notice of sale to Borrower, and to other persons

prescribed by Applicable Law, in the manner provided by

Applicable Law."  (Docket Entry # 29-2, p. 27, ¶ 22)

(capitalization and bold font omitted).  The notice must specify

the default and "the action required to cure the default" and

that a failure to cure the default "may result in acceleration

of the" money owed and a "sale of the Property."  (Docket Entry

# 29-2, p. 27, ¶ 22) (bold font omitted).  As further stated in

paragraph 22, the lender must "publish the notice of sale, and

the Property shall be sold in the manner prescribed by

Applicable Law."[5]  (Docket Entry # 29-2, p. 27, ¶ 22).

---

[5]  The discussion section sets out the terms of paragraph 22 in
greater detail.

The mortgage secures to Fremont, as the lender, "the repayment of the Loan."[6]  (Docket Entry # 29-2, p. 17).  Under the mortgage, plaintiff agreed that the note "together with" the mortgage "can be sold one or more times without prior notice to Borrower."  (Docket Entry # 29-2, p. 25, ¶ 20).  The note, in turn, allows Fremont to transfer the note without providing prior notice to plaintiff.  (Docket Entry # 29-2, pp. 6, 9).  The mortgage also states that, "If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer . . .."[7]  (Docket Entry # 29-2, p. 25, ¶ 20).  On September 9, 2014, MERS, as nominee for Fremont, assigned the mortgage to HSBC Bank USA, National Association, as Trustee for Freemont Home Loan Trust 2005-E, Mortgage-Backed Certificates, Series 2005-E ("HSBC").[8]  (Docket Entry # 29-2, p. 36) (capitalization and bold font omitted).  This "Assignment of Mortgage" was

---

[6]  The mortgage defines the "Loan" as "the debt evidenced by the Note."  (Docket Entry # 29-2, p. 16).

[7]  The mortgage defines the "Loan Servicer" as the entity "that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."  (Docket Entry # 29-2, p. 25, ¶ 20).

[8]  The assignment states that HSBC is the trustee for Fremont Home Loan Trust and lists its address as "c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409."  (Docket Entry # 29-2, p. 36).

recorded in the Norfolk County Registry of Deeds.  (Docket Entry # 29-2, p. 36).

On June 24, 2014, Ocwen sent plaintiff a letter by first class certified mail titled "150 DAY RIGHT TO CURE YOUR MORTGAGE DEFAULT."  (Docket Entry # 29-2, pp. 38-44) (bold font omitted). The June 24, 2014 letter ("June letter") specifies the dates when monthly loan payments were not paid spanning inclusively from May 1, 2006 to June 1, 2014 and the amounts plaintiff should have paid on each date.  (Docket Entry # 29-2, pp. 38-40).  The June letter further states that plaintiff "must pay the past due amount of $228[,]546.65 on or before 11/24/2014 which is 150 days from the date of this notice."  (Docket Entry # 29-2, p. 38).  It also instructs plaintiff who he should pay and outlines various resources for individuals facing foreclosure.  (Docket Entry # 29-2, p. 41).  Moreover, the June letter notifies plaintiff in bold writing that, "If you do not pay the total past due amount of $228[,]546.65 and any additional payments that may become due by 11/24/2014 you may be evicted from your home after a foreclosure sale . . . [and] the mortgagee or new buyer will take over ownership of your home." (Docket Entry # 29-2, p. 41) (bold font omitted).  Also, the June letter provides contact information including HSBC's telephone number and hours of availability and Ocwen's mailing address for written requests.  (Docket Entry # 29-2, p. 41).

The letter then enumerates options and rights plaintiff may have including: "the right to bring a court action to challenge the existence of the default, or assert other defenses to immediate payment and sale that may be available in your mortgage documents or under applicable law"; "the right to reinstate your account up to five days before the foreclosure sale of your home"; "the right to sell the property prior to foreclosure sale and use the proceeds to pay the mortgage in full"; "the option of voluntarily granting a deed to the residential mortgage in lieu of foreclosure"; and the option to "attempt to refinance the obligation by obtaining a new loan." (Docket Entry # 29-2, p. 43).

On October 11, 2014, Ocwen sent plaintiff another letter by first class certified mail reminding him that: "We have not received your mortgage payments for the months of 05/01/06 through 10/01/14.  This means your account is now in default, and if you do not make these payments or reach another resolution with us, we may soon refer your loan to foreclosure." (Docket Entry # 29-2, pp. 46-50).  The October 11, 2014 letter ("October letter") contains contact information for counseling services and mentions options available to plaintiff including refinancing, modification, forbearance, sale, short sale, and deed in lieu of foreclosure.  (Docket Entry # 29-2, pp. 46-47). It also states that even if plaintiff pursues these options,

"[c]ollection activity will continue and your monthly mortgage payment will still be due while we evaluate your financial situation." (Docket Entry # 29-2, p. 47).  The October letter names "Marilinda Ponce De Leon" as plaintiff's "Home Retention Specialist" and lists her contact details.  (Docket Entry # 29-2, p. 47).  The letter also provides telephone, online, and postal contact details for Ocwen.  (Docket Entry # 29-2, p. 47).

On July 1, 2016, counsel for HSBC sent copies of a notice of sale letter to plaintiff by first class certified mail.  The letters each state:

> You are hereby notified of the intention of HSBC Bank USA, National Association, as Trustee for Fremont Home Loan Trust . . . to foreclose by sale under the power of sale contained in a certain mortgage given by Lyndon Benjamin to Mortgage Electronic Registration Systems, Inc. . . . The sale is scheduled for August 3, 2016 at 1:00PM on the premises.  The notice is provided to you because an examination of the record title shows you held an interest of record in the property thirty (30) days prior to the sale.  Also enclosed is a copy of the Certification of Right to Foreclose pursuant to 209 C.M.R 18.21A(2)(c).

(Docket Entry # 29-2, pp. 61-64).  A notice of sale was published in the *Milton Times* on August 25, September 1, and September 8, 2016.  (Docket Entry # 29-2, pp. 4, 72).

On or about November 17, 2016, HSBC, through its servicer, Ocwen, foreclosed on the property.  (Docket Entry # 29-2, p. 70).  The property was subsequently sold to HSBC for $428,000 at

the scheduled foreclosure auction.[9]  (Docket Entry # 29-2, p.
70).  According to an affidavit of sale, HSBC complied with
"Chapter 244, Section 14 of the Massachusetts General Laws, as
amended, by causing to be mailed the required notices, certified
mail, return receipt requested."  (Docket Entry # 29-2, pp. 70-
71).

On November 30, 2016, Carlene Reid, a contract management
coordinator for Ocwen, signed the foreclosure deed on the
property.  (Docket Entry # 29-2, p. 74).  The same day, Jose
Manrique, also a contract management coordinator for Ocwen,
signed an affidavit confirming that "the contractual notice of
default was sent to the mortgagor(s) on or before July 17,
2015."  (Docket Entry # 29-2, pp. 75-76).  Both the foreclosure
deed and the affidavit are notarized and recorded in the Norfolk
County Registry of Deeds.  (Docket Entry # 29-2, pp. 74-76).

DISCUSSION

I.   Lack of Contractual and Statutory Notice

A.   Contractual Notice (Paragraph 22 of Mortgage)

In moving for summary judgment on the lack of notice breach
of contract claim, defendants submit they complied with the
provisions in the mortgage by providing sufficient notice of the

---

[9]  The public auction was scheduled originally for September 23,
2016 but postponed twice.  The auction eventually took place on
November 17, 2016.  (Docket Entry # 29-2, p. 70).

foreclosure sale to plaintiff.  (Docket Entry # 29).  Defendants
initially relied on the October letter as providing the
requisite notice under paragraph 22 (Docket Entry # 29) before
relying on the June letter as satisfying paragraph 22 (Docket
Entry # 32).  Plaintiff, in turn, seeks summary judgment on the
same breach of contract claim based on defendants' failure to
strictly comply with paragraph 22.  (Docket Entry # 31).
Plaintiff relies exclusively on the October letter as the notice
of default that did not comply with paragraph 22.  (Docket Entry
# 31).

     As determined by the Massachusetts Supreme Judicial Court
("SJC"), a foreclosing bank's "strict compliance with the notice
of default required by paragraph 22 [of the mortgage] is
necessary in order for a foreclosure sale to be valid."  Paiva
v. Bank of New York Mellon, 120 F. Supp. 3d 7, 10 (D. Mass.
2015) (citing Pinti v. Emigrant Mortg. Co., Inc., 33 N.E.3d
1213, 1226 (Mass. 2015) ("Pinti").  The SJC in Pinti held that
"provisions of paragraph 22 constitute 'terms of the mortgage'
governing the power of sale, and that, in order to conduct a
valid foreclosure, Emigrant was obligated to comply strictly
with paragraph 22's notice of default provisions."  Pinti, 33
N.E.3d at 1224.  Pinti applies prospectively "to mortgage
foreclosure sales" with mortgages "containing paragraph 22 . . .
for which the notice of default required by paragraph 22 is sent

after the date of this opinion," July 17, 2015.[10]  Id. at 1227;
see also Aurora Loan Servs., LLC v. Murphy, 41 N.E.3d 751, 756–
57 (Mass. App. Ct. 2015) (extending Pinti to cases pending on
appeal at the time of the Pinti decision).  The standard form
paragraph 22 in the mortgage at issue in Pinti tracks the
language of paragraph 22 in plaintiff's mortgage.  See Pinti, 33
N.E.3d at 1215 n.6, 1221 n.16; (Docket Entry # 29-2, p. 27, ¶
22).

    Paragraph 22 in the mortgage requires the inclusion of
certain language in the notice that HSBC, as the lender's
assignee, or Ocwen as its agent, must send to plaintiff before
invoking the statutory power of sale.  (Docket Entry # 29-2, p.
27, ¶ 22).  As stated in paragraph 22, the notice must include:

> (a) the default; (b) the action required to cure the
> default; (c) a date, not less than 30 days from the date
> the notice is given to Borrower, by which the default must
> be cured; and (d) failure to cure the default on or before
> the date specified in the notice may result in acceleration
> of the sums secured by this Security Instrument and sale of
> the Property.  The notice shall inform Borrower of the
> right to reinstate after acceleration and the right to
> bring a court action to assert the non-existence of a
> default or any other defense of Borrower to acceleration
> and sale.

(Docket Entry # 29-2, p. 27, ¶ 22).

---

[10]  Ocwen mailed the June and October letters prior to the Pinti
decision.  Defendants submit that they nevertheless complied
with the holding in the Pinti decision.

As noted, plaintiff contends that defendants failed to comply with a number of the requirements contained in paragraph 22 and that such failure voids the foreclosure sale. (Docket Entry # 31). Plaintiff submits that the "notice of default" sent to plaintiff on October 11, 2014, i.e., the October letter, was deficient. Specifically, plaintiff maintains that the October letter did not comply with paragraph 22 and is therefore deficient because the letter: (1) "does not specify a date, not less than 30 days from the date the notice is given to the borrower, by which the default must be cured" ("item one"); (2) "does not specify that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the security instrument and sale of the property" ("item two"); (3) "does not inform the borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of the borrower to acceleration and sale" ("item three"); (4) "does not specify that if the default is not cured on or before the date specified in the notice[,] lender at its option may require immediate payment in full of all sums secured by the security instrument without further demand and may invoke the statutory power of sale and any other remedies permitted by applicable law" ("item four"); and (5) "does not specify that lender shall be entitled to collect all expenses incurred in

pursuing the remedies provided in section 22 including, but not limited to, reasonable attorney's fees and cost of title evidence" ("item five").  (Docket Entry # 31).

Plaintiff sets out this argument that the October letter does not comply with paragraph 22 in a three-page opposition (Docket Entry # 31) to defendants' summary judgment motion and reiterated the argument at the June 2019 hearing.  The origin of the argument stems from a post-foreclosure, summary judgment affidavit by an Ocwen Senior Loan Analyst that authenticates and briefly describes various documents in the loan file.  (Docket Entry # 29-2, pp. 2-4).  Admittedly, the May 20, 2019 affidavit identifies the October letter as "a notice of default letter" and the June letter as "a right to cure letter."  (Docket Entry # 29-2, p. 3, ¶¶ 9-10).  Defendants' supporting memorandum carries the description of the October letter forward by describing it as the "notice of default" that "describes the default" and how to cure it in compliance with "paragraph 22." (Docket Entry # 29, pp. 6-7).  Accordingly, at the June 2019 hearing, plaintiff asserted that defendants relied on the October letter as satisfying paragraph 22 and that Pinti requires "strict compliance" with the terms of paragraph 22.

The argument overlooks that defendants corrected any misconception in a reply brief filed prior to the hearing. (Docket Entry # 32).  Therein, they point out that the June

letter "completely satisfies" paragraph 22 as well as Pinti,
even though Ocwen sent the letter prior to the July 17, 2015
date of the Pinti decision.  (Docket Entry # 32).  Defendants
repeated their reliance on the June letter at the June 2019
hearing.

Pinti requires the notice to strictly comply with the
notice provisions of the mortgage in paragraph 22 prior to the
foreclosure sale.  See Pinti, 33 N.E.3d at 1226 ("Emigrant's
strict compliance with the notice of default required by
paragraph 22 was necessary in order for the foreclosure sale to
be valid; Emigrant's failure to strictly comply rendered the
sale void.").  Ocwen's description of the October letter as a
"notice of default" more than two years after the foreclosure
does not violate paragraph 22.  It is the notice itself, rather
than defendants' description of it years after the foreclosure,
that requires strict compliance.  See Pinti, 33 N.E.3d at 1220
("our decisions suggest that the mortgage terms requiring strict
compliance are limited to (1) terms directly concerned with the
foreclosure sale").

Moreover, defendants did not waive the argument that the
June letter complies with paragraph 22.  Rather, they raised it
in response to plaintiff's opposition, and they repeated it at
the June 2019 hearing.  Hence, in light of their sufficient
development of the argument, there was no waiver.  Cf. Curet-

17

Velázquez v. ACEMLA de P.R., Inc., 656 F.3d 47, 54 (1st Cir. 2011) ("[a]rguments alluded to but not properly developed before a magistrate judge are deemed waived"). This court never relied on the representation, which defendants corrected prior to the June 2019 hearing. It is also worth noting that plaintiff had ample opportunity to refute defendants' revised argument at the hearing. He also could have filed a motion for leave to file a sur-reply. See LR. 7.1(b)(3). In fact, plaintiff's failure to address the revised argument or argue that the June letter does not satisfy paragraph 22 amounts to a waiver of an argument that the June letter is deficient. See Curet-Velázquez, 656 F.3d at 54; Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).

Accordingly, in seeking summary judgment, defendants properly submit that the June letter satisfies paragraph 22. Plaintiff does not address the June letter's compliance with paragraph 22. Rather, he relies on the October letter. Plaintiff's waiver of the argument obviates the need to address the June letter's compliance with paragraph 22 and the Pinti decision. See Eldridge v. Gordon Bros. Grp., L.L.C., 863 F.3d 66, 84 (1st Cir. 2017) (rejecting plaintiff's argument that district judge should have exercised his discretion and addressed the merits of plaintiff's waived summary judgment argument rather then rely on waiver). Nevertheless and solely

as an alternative argument to allow summary judgment, this court examines whether the June letter complies with paragraph 22.

Turning to item one of plaintiff's argument, plaintiff submits that the October letter does not comply with paragraph 22(c) because "it does not specify a date, not less than 30 days from the date the notice is given to the borrower, by which the default must be cured." (Docket Entry # 31, p. 1). Although true, the June letter gives plaintiff more than 30 days notice to cure the default when it states, "[y]ou must pay the past due amount of $228[,]546.65 on or before 11/24/2014 which is 150 days from the date of this notice." (Docket Entry # 29-2, p. 38). The June letter, as its title states, complies with paragraph 22 because it gives plaintiff the ability to cure the default in 150 days, which is more than 30 days from the date of the letter giving notice of default.

Plaintiff next submits that the October letter did not comply with item two. Paragraph 22(d) requires notice that the "failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." (Docket Entry # 29-2, p. 27, ¶ 22). Again, while true with respect to the October letter, the June letter satisfies paragraph 22(d) because it states that, "Failure to cure the default on or before the date specified in this notice may result in

19

acceleration of the sums secured by the Mortgage and sale of the Property."  (Docket Entry # 29-2, p. 43) (underlining omitted).

As set out in item three above, plaintiff maintains that the October letter did not comply with this requirement. (Docket Entry # 31).  Paragraph 22 requires that, "The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."  (Docket Entry # 29-2, p. 27, ¶ 22). Paragraph 19 describes this right to reinstate after acceleration and places a time limit upon it of five days before the sale.  (Docket Entry # 29-2, p. 25, ¶ 19).  Whereas the October letter is noncompliant with the above-noted provisions, the June letter satisfies these provisions by stating, "Even after the loan has been accelerated, you have the right to reinstate your account up to five days before the foreclosure sale of your home . . . ."  (Docket Entry # 29-2, p. 43).  The June letter further states, "You have the right to bring a court action to challenge the existence of the default, or assert other defenses to immediate payment and sale that may be available in your mortgage documents or under applicable law." (Docket Entry # 29-2, p. 43).  Hence, it complies with the foregoing requirement of paragraph 22.

Turning to items four and five and as previously stated, plaintiff maintains that the October letter does not include the following language: "if the default is not cured on or before the date specified in the notice lender at its option may require immediate payment in full of all sums secured by the security instrument without further demand and may invoke the statutory power of sale and any other remedies permitted by applicable law" (item four); and "lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in section 22 including, but not limited to, reasonable attorney's fees and cost of title evidence" (item five). (Docket Entry # 31, p. 2).  Because the October letter did not contain this language, it did not strictly comply with paragraph 22, according to plaintiff.  (Docket Entry # 31).

Examining whether paragraph 22 requires the inclusion of this language as part of the notice, the paragraph, in greater detail than previously quoted, reads as follows:

> Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than [thirty] days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after

21

> acceleration and the right to bring a court action to
> assert the non-existence of a default or any other defense
> of Borrower to acceleration and sale.  *If the default is
> not cured on or before the date specified in the notice,
> Lender at its option may require immediate payment in full
> of all sums secured by this Security Instrument without
> further demand and may invoke the STATUTORY POWER OF SALE
> and any other remedies permitted by Applicable Law. Lender
> shall be entitled to collect all expenses incurred in
> pursuing the remedies provided in this Section 22,
> including, but not limited to, reasonable attorneys' fees
> and costs of title evidence.*

(Docket Entry # 29-2, p. 27, ¶ 22) (emphasis added and bold font omitted).  The emphasized language corresponds to the language of items four and five that plaintiff submits paragraph 22 requires in the notice.

"'[W]hen the language of a contract is clear, it alone determines the contract's meaning.'" James B. Nutter & Co. v. Estate of Murphy, 88 N.E.3d 1133, 1138 (Mass. 2018) (construing mortgage provision) (internal citation omitted; brackets in original).  A contract is construed "as a whole, so as 'to give reasonable effect to each of its provisions.'" Id. at 1139 (internal citation omitted).  "Contractual language is ambiguous 'if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.'" Id. at 1138 (internal citation omitted).

The language in the fourth and fifth sentences of paragraph 22 does not address the contents of the notice.  Rather, the second and third sentences depict the contents of the notice,

each beginning with, "The notice shall . . . ."  (Docket Entry #
29-2, p. 27, ¶ 22).  In contrast, the fourth and fifth sentences
of the paragraph add that if the default is not cured, then the
Lender may require payment in full, exercise the power of sale,
and collect attorneys' fees and costs.  (Docket Entry # 29-2, p.
27, ¶ 22).  The language of these two sentences admonish the
borrower about what will occur "[i]f the default is not cured"
rather than describe the substance or content of the notice
itself.  (Docket Entry # 29-2, p. 27, ¶ 22).

Likewise, the SJC in Pinti describes the contents of the
notice as parts (a) through (d) of paragraph 22 and the right to
reinstate in the immediately following sentence.  The SJC in
Pinti commands that the defendant mortgagee:

> Emigrant is required to notify the plaintiffs of "(a) the
> default; (b) the action required to cure the default; (c) a
> date, not less than [thirty] days from the date the notice
> is given to [the plaintiffs], by which the default must be
> cured; and (d) that failure to cure the default on or
> before the date specified in the notice may result in
> acceleration of the sums secured by [the mortgage]."
> Paragraph 22 further provides that such notice must inform
> the plaintiffs "of the right to reinstate after
> acceleration and *the right to bring a court action to
> assert the non-existence of a default or any other defense
> of [the plaintiffs] to acceleration and sale*" (emphasis
> added), and adds that upon failure to cure the default,
> Emigrant may invoke "the statutory power of sale."

Pinti, 33 N.E.3d at 1215 (quoting paragraph 22 of the
plaintiffs' mortgage) (brackets in original).  The end phrase,
which corresponds to paragraph 22's fourth sentence, simply

states that paragraph 22 "adds that upon failure to cure the
default, Emigrant may invoke 'the statutory power of sale.'"
Id.  The court describes this paragraph 22 language as an
additional caveat rather than part of what the notice must
inform the plaintiffs.  Id.  Consistent with the language of
paragraph 22 as a whole, the language of the fourth and fifth
sentences is a warning to the borrower of the consequences "[i]f
the default is not cured . . . ."  (Docket Entry # 29-2, p. 27,
¶ 22); see Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 165
(1st Cir. 2018) (describing paragraph 22 as concerning
"mortgagee's provision of notice to the mortgagor of its
default, its right to cure, and the remedies that are available
to the mortgagee"); Galvin v. EMC Mortg. Corp., No. 12-cv-320-
JL, 2013 WL 1386614, at *6 (D.N.H. Apr. 4, 2013) (interpreting
similar language, albeit under New Hampshire law, and describing
it as simply permitting mortgagee to "'require immediate
payment'") (internal citation omitted).  The clear language of
paragraph 22 therefore does not require the inclusion of the
language in items four and five in the notice.

In sum, notwithstanding plaintiff's arguments to the
contrary, defendants fully complied with the contractual notice
requirements of paragraph 22 and afforded plaintiff with proper
notice.  Plaintiff also waived the argument that the June letter
does not comply with paragraph 22 and Pinti postdates the

24

mailing of the June letter.  Defendants are therefore entitled
to summary judgment on the breach of contract claim seeking to
void the foreclosure due to lack of contractual notice.  For
similar reasons, plaintiff's cross motion for summary judgment
on the same claim is devoid of merit.

B.   Statutory Notice

Defendants argue that they complied with the statutory
notice requirements in section 14 ("section 14") of
Massachusetts General Laws chapter 244.  (Docket Entry # 29).
In the complaint, plaintiff raises a breach of contract claim
based on lack of notice and seeks to rescind the foreclosure on
that basis.  (Docket Entry # 10, pp. 4-5).  Plaintiff fails to
address the statutory notice argument and therefore waives any
argument that defendants did not comply with these statutory
notice laws.  See Audette v. Town of Plymouth, Mass., 858 F.3d
13, 23 (1st Cir. 2017) ("'issue raised in the complaint but
ignored at summary judgment may be deemed waived'") (internal
citations omitted).

In Massachusetts, "strict compliance with the statutory
notice of sale provision is 'essential to the valid exercise of
[the] power' of sale." Culhane v. Aurora Loan Servs. of Neb.,
826 F. Supp. 2d 352, 362 (D. Mass. 2011) (quoting U.S. Bank N.A.
v. Ibanez, 941 N.E. 2d 40, 50 (Mass. 2011)).  A mortgage holder
may "'foreclose on a property . . . by exercise of the statutory

power of sale, if such power is granted by the mortgage itself.'" Santiago v. U.S. Bank, N.A., as Tr. for LSF9 Master Participation Tr., Civil Action No. 17-10256-ADB, 2017 WL 5297907, at *3 (D. Mass. Nov. 13, 2017) (quoting In re Bailey, 468 B.R. 464, 472 (Bankr. D. Mass. 2012), quoting Ibanez, 941 N.E.2d at 49).  Where, as here, "a mortgage grants a mortgage holder the power of sale, . . . it includes by reference the power of sale set out in G.L. c. 183, § 21, and further regulated" in a number of other foreclosure statutes.  Ibanez, 941 N.E.2d at 49.

Section 21 of Massachusetts General Laws 183 ("section 21") requires the mortgagee to "'first comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale'" in order "for a foreclosure sale pursuant to the power" of sale to be valid. Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1127 & n.13 (Mass. 2012) (quoting section 21); accord Pinti, 33 N.E.3d at 1218.  "Principal among these is [section 14]," Eaton, 969 N.E.2d at 1128, which "governs the procedure for providing proper notice of foreclosure under the power of sale." Santiago, 2017 WL 5297907, at *4; see Ibanez, 941 N.E.2d at 50 (describing section 14 as "the notice requirement" in relation to "a foreclosure by power of sale").  The language of section 14 reads, in pertinent part, as follows:

> The mortgagee or person having estate in the land
> mortgaged, or a person authorized by the power of sale, . .
> . may, upon breach of condition and without action, perform
> all acts authorized or required by the power . . . no sale
> under such power shall be effectual to foreclose a
> mortgage, unless, previous to such sale, notice of the sale
> has been published once in each of 3 successive weeks, the
> first publication of which shall be not less than 21 days
> before the day of sale, in a newspaper published in the
> city or town where the land lies or in a newspaper with
> general circulation in the city or town where the land lies
> and notice of the sale has been sent by registered mail to
> the owner or owners of record of the equity of redemption
> as of 30 days prior to the date of sale, said notice to be
> mailed by registered mail at least 14 days prior to the
> date of sale to said owner or owners . . . .

Mass. Gen. Laws ch. 244, § 14.

In the case at bar, defendants complied with the notice requirements in section 14.  (Docket Entry # 29-2, pp. 70-72). They mailed plaintiff notice of the sale as previously detailed by certified first class delivery.  "Registered mail, for purposes of sending notice, includes certified mail."  Culley v. Bank of Am., N.A., Civil Action No. 18-40099-DHH, 2019 WL 1430124, at *4 (D. Mass. Mar. 29, 2019) (citing Mass. Gen. Laws ch. 4, § 7).  Initially, the public auction was scheduled for September 23, 2016.  (Docket Entry # 29-2, p. 70).  Defendants published a notice of sale in the Milton Times for three successive weeks prior to the foreclosure sale in accordance with section 14.[11]  (Docket Entry # 29-2, pp. 70, 72).  The

---

[11]  The Milton Times is a newspaper that is published and widely circulated in Milton, Massachusetts.  (Docket Entry # 29-2, p. 70).

notice of sale was published on August 25, 2016, September 1, 2016, and September 8, 2016.  (Docket Entry # 29-2, pp. 70, 72). At the noticed time and place on September 23, 2016, "the sale was postponed by public proclamation" to November 8, 2016 and then another by public proclamation to November 17, 2016. (Docket Entry # 29-2, p. 70).  "The postponement of the sale date by public proclamation did not obligate Defendant[s] to satisfy Section 14's notice requirements a second time." Santiago, 2017 WL 5297907, at *4 n.4.  Whether plaintiff actually received notice of the sale is immaterial.  See Dooling v. James B. Nutter & Co., Inc., 139 F. Supp. 3d 505, 512 (D. Mass. 2015) (Massachusetts law "is clear; the requirement that the notice be mailed to the owner of the relevant property 'is satisfied by mailing and *nonreceipt is irrelevant*'") (internal citations omitted).  The foreclosure auction took place on November 17, 2016, more than 21 days after the first published notice in compliance with section 14.  (Docket Entry # 29-2, p. 70).  HSBC purchased the property at the scheduled foreclosure auction for $428,000.  (Docket Entry # 29-2, p. 70).

Further, defendants confirmed their compliance with section 14 in a publicly-recorded affidavit of sale.  (Docket Entry # 29-2, pp. 70-71).  Contract Management Coordinator for Ocwen Carlene Reid certified that "[HSBC] complied with Chapter 244, Section 14 of the Massachusetts General Laws, as amended, by

causing to be mailed the required notices, certified mail, return receipt requested." (Docket Entry # 29-2, p. 70).

Accordingly, defendants complied with the statutory notice provisions in section 14. Thus, to the extent the pro se complaint raises a claim that defendants did not fulfill the notice requirements of section 14, they are entitled to summary judgment on the claim.

## II. Violation of Due Process

Defendants next seek summary judgment on the due process claim. They submit that their actions complied with "all contractual and statutory notice provisions" and the same conduct provides adequate notice under the Due Process Clause. (Docket Entry # 29, p. 4). In the alternative, they contend there is no state action. (Docket Entry # 29, p. 4).

Plaintiff fails to raise an argument in response to defendants' contentions regarding the Due Process Clause claim. Accordingly, he waived any argument that the notice provided was insufficient under the Due Process Clause or that state action is present. See Audette, 858 F.3d at 23.

Here, as in Cullen v. U.S. Bank Tr., N.A. for LSF9 Master Participation Tr., Civil Action No. 16-12641-PBS, 2017 WL 3634089, at *3 (D. Mass. July 12, 2017), summary judgment is warranted due to the absence of state action. Although the pro

se complaint[12] does not refer to 42 U.S.C. § 1983 ("section 1983") as the basis for the improper foreclosure "without due process or notification" (Docket Entry # 10, p. 4), "'[i]t is well established that "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983."'" Littler v. Massachusetts, Civil Action No. 17-11277-RGS, 2017 WL 3495173, at *1 n.1 (D. Mass. Aug. 14, 2017) (internal citations omitted; brackets in original); accord Bishay v. Cornetta, Civil Action No. 17-11591-ADB, 2017 WL 5309683, at *3 n.4 (D. Mass. Nov. 13, 2017), appeal filed, No. 18-1383 (May 3, 2018); see also Wilson v. Moreau, 440 F. Supp. 2d 81, 92 (D.R.I. 2006). The court in Cullen succinctly states that, "The First Circuit rejected a similar [constitutional] challenge to the Rhode Island nonjudicial foreclosure statute on the basis that there is no state action." Cullen, 2017 WL 3634089, at *3 (citing Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 34 (1st Cir. 2014), and Van Daam v. Chrysler First Fin. Serv. Corp. of R.I., 915 F.2d 1557 (1st Cir. 1990)). The Cullen court also explains that, "Cullen does not point out a relevant distinction between the Massachusetts and Rhode Island

---

[12]   Plaintiff filed the complaint pro se in February 2017 and subsequently obtained counsel, who filed an appearance in December 2017.  (Docket Entry # 21).

nonjudicial foreclosure statutes." Id. Here too, there is no relevant distinction between the Rhode Island and Massachusetts nonjudicial foreclosure statutes with respect to state action. In addition, plaintiff fails to distinguish how the Massachusetts foreclosure statute differs from the Rhode Island foreclosure statute regarding state action. Plaintiff fails to raise, let alone withstand summary judgment by identifying sufficient facts, that Ocwen's conduct falls within the reach of the "'public function test, the joint action/nexus test, or the state compulsion test,'" as discussed in Grapentine, 755 F.3d at 32 (internal citation omitted). Summary judgment is therefore appropriate on the Due Process clause claim.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[13] that defendants' motion for summary judgment (Docket Entry # 28) be **ALLOWED** as to the remaining claims and that plaintiff's cross motion for summary judgment be **DENIED**.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[13] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made, and the basis for such objection should be included. See Fed. R. Civ. P. 72(b). Any party may respond to another party's objection within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.